Altman v Shaw (2020 NY Slip Op 03446)





Altman v Shaw


2020 NY Slip Op 03446


Decided on June 18, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 18, 2020

530184

[*1]Candedia L. Altman, Respondent,
v
Michael Shaw et al., Appellants, et al., Defendant.

Calendar Date: May 20, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Devine and Colangelo, JJ.


Goldberg Segalla, Albany (Latha Raghavan of counsel), for appellants.
Edward P. Ryan, Albany (John T. Casey Jr., Troy, of counsel), for respondent.



Colangelo, J.
Appeal from an order of the Supreme Court (Hartman, J.), entered October 1, 2019 in Albany County, which, among other things, partially denied a motion by defendants Michael Shaw and Johnson & Johnson for summary judgment dismissing the complaint and cross claims against them.
In September 2015, plaintiff was injured while operating her vehicle in stop-and-go, rush-hour traffic on Central Avenue in the Town of Colonie, Albany County. While fully stopped, plaintiff's vehicle was rear-ended in a chain-reaction collision involving two other vehicles. The middle vehicle, directly behind plaintiff, was a Subaru operated by defendant Michael Shaw and owned by his employer, defendant Johnson & Johnson (hereinafter collectively referred to as the Shaw defendants). The rear vehicle was a Honda Accord owned and operated by defendant Jamel R. Gibson.
Plaintiff thereafter commenced this action alleging that she sustained serious injuries within the meaning of Insurance Law § 5102 (d) as a result of the accident. Defendants answered, with Gibson asserting in his answer a cross claim alleging that plaintiff's damages were sustained as a result of the Shaw defendants' negligence. Following the completion of discovery, the Shaw defendants moved for summary judgment dismissing the complaint and the cross claim on the grounds that (1) Gibson, as the driver of the rear vehicle, was solely liable for the accident and (2) plaintiff did not suffer a serious injury as defined in Insurance Law § 5102 (d). Gibson also moved for summary judgment dismissing the complaint against him solely on the ground that plaintiff did not suffer a serious injury as a result of the accident. Plaintiff opposed the motions and cross-moved for partial summary judgment on the issue of liability, arguing that she was fully stopped when her vehicle was struck from behind and that defendants failed to offer a nonnegligent explanation for the collision.
Supreme Court, among other things, denied that part of the Shaw defendants' motion seeking to hold Gibson solely liable for plaintiff's injuries, but granted their motion to the extent that they sought to hold Gibson at least partially liable for plaintiff's injuries. The court also granted defendants' motions on the issue of serious injury except as it pertained to plaintiff's cervical spine injury in the significant limitation of use category (see Insurance Law § 5102 [d]). Only the Shaw defendants appeal.
We first address the Shaw defendants' claim that Supreme Court erred in denying their motion for summary judgment as to plaintiff's claim that she sustained a serious injury to her cervical spine within the meaning of Insurance Law § 5102 (d).[FN1] The Shaw defendants assert, among other things, that plaintiff's expert failed to address and distinguish plaintiff's preexisting conditions from any injury caused by the subject accident. In opposition, plaintiff contends that her sworn affidavit and the medical report of Thomas M. McCormack, her neurosurgeon, establish that she did not suffer from cervical spinal issues before the accident and, thus, a triable issue of fact has been raised that supports denial of the Shaw defendants' motion.
"Under New York's no-fault system of automobile insurance, a person injured in a motor vehicle accident may only recover damages if he or she sustained a serious injury" (Sul-Lowe v Hunter, 148 AD3d 1326, 1327 [2017] [internal quotation marks, ellipsis and citations omitted]; see Fillette v Lundberg, 150 AD3d 1574, 1576 [2017]). "As relevant here, Insurance Law § 5102 (d) defines 'serious injury' as a bodily injury resulting in . . . significant limitation of use of a body function or system" (Cross v Labombard, 127 AD3d 1355, 1355 [2015] [internal quotation marks and brackets omitted]). "As proponents of the motion for summary judgment, [the Shaw] defendants bore the initial burden of establishing, through competent medical evidence, that plaintiff did not sustain a serious injury caused by the accident" (Lavrinovich v Conrad, 180 AD3d 1265, 1267 [2020] [internal quotation marks and citations omitted]; see Ni v O'Brien, 179 AD3d 1190, 1191 [2020]). The Shaw defendants may meet this burden by establishing that plaintiff had a "documented history of extensive preexisting conditions and injuries that have produced the same types of symptoms that plaintiff now attributes to the subject accident" (Vanalstyne v Gordon, 180 AD3d 1140, 1142 [2020] [internal quotation marks and citation omitted]). If this burden is met, the burden then shifts to plaintiff to raise a triable issue of fact by producing "objective medical evidence distinguishing her preexisting conditions from the injuries claimed to have been caused by the accident" (id. [internal quotation marks, brackets and citations omitted]; see St. Clair v Giroux, 132 AD3d 1199, 1200 [2015]).
In support of their motion, the Shaw defendants submitted, among other things, the affidavit of Bradley D. Wiener, an orthopedic surgeon. In June 2019, Wiener performed an independent medical examination of plaintiff and found restricted movement in her cervical spine and decreased range of motion in her right shoulder. Wiener opined that the restricted movement in her cervical spine was consistent with that of an individual who has undergone a cervical fusion surgery. Wiener also opined that plaintiff's complaints were not caused by acute trauma that would be expected to result from the subject motor vehicle accident but, rather, were indicative of "multilevel degenerative disc disease" consistent with "long-term degeneration of the spine." In his view, plaintiff suffered, at most, a minor cervical strain that would have resolved in no more than six to eight weeks. The Shaw defendants also submitted the affidavit of William R. Bussone, a biomechanical engineer. Bussone analyzed the subject collision to calculate the change in velocity for each vehicle involved. He concluded that, because plaintiff was rear-ended, the forward motion would be limited by her seat belt and shoulder harness, and the impact could not have caused plaintiff's cervical spine injury. Based upon this evidence, we find that the Shaw defendants met their prima facie burden of demonstrating that plaintiff did not sustain a serious injury as a result of this accident, thus shifting the burden to plaintiff to raise a triable issue of fact.
To this end, plaintiff submitted, among other things, McCormack's medical report and plaintiff's deposition testimony. Plaintiff went to see McCormack in early March 2016, after a CT scan of her neck that was ordered by her primary care provider showed "disc herniations at C6 and C7," and after chiropractic treatment and physical therapy proved unsuccessful. As McCormack's report indicates, during her initial visit in early March 2016, plaintiff reported pain in the back of her neck that continued down the back or her right arm through the mid forearm and into the mid portion of her right hand. Plaintiff also reported numbness in the second and third digits of her right hand and "weakness in her hands." Her physical examination was normal with the exception of her right arm, where there was demonstrated weakness and diminished sensation in the mid right hand. According to McCormack, plaintiff's presurgical workup "demonstrated evidence of degenerative changes in her cervical spine and a right sided disc protrusion at C6-7 more so than C5-6." However, he found plaintiff's symptoms to be "consistent with a cervical radiculopathy at 6-7 with some contribution from 5-6." Ultimately, McCormack performed an "anterior cervical discectomy and fusion at C5-6 and C6-7" finding that, in addition to the disc herniation of C6-7, plaintiff had additional damage at C5-C6. McCormack opined, "beyond a reasonable degree of medical certainty," that plaintiff's neck and arm pain were "directly causally related to [the] accident." McCormack's report also noted that plaintiff was "without significant cervical spine issues prior to the motor vehicle accident."
Plaintiff testified that, after the accident, she began experiencing pain and numbness in her right arm and hand. Plaintiff also testified that the surgery alleviated approximately 90% of the radiculopathy, but some radiculopathy remains in her upper forearm on the posterior side. To ameliorate these symptoms, plaintiff, among other things, takes a muscle relaxer every night at bedtime, uses a muscle stimulator, places patches on her neck which interfere with the spasms and does massage therapy every two weeks. In light of the conflicting expert medical opinions and viewing the evidence in the light most favorable to plaintiff, the nonmoving party (see Cross v Labombard, 127 AD3d at 1356), plaintiff's proof was sufficient to raise a triable issue of fact regarding whether plaintiff's cervical spine condition was a serious injury caused by the accident and, therefore, Supreme Court properly denied the Shaw defendants' motion in this regard.
Turning to the issue of liability, the Shaw defendants contend that Supreme Court erred in denying their motion for summary judgment seeking to hold Gibson solely liable for the accident. "Where, as here, a moving vehicle is involved in a rear-end collision with a stopped vehicle, 'a prima facie case of negligence exists that must be rebutted by an adequate, nonnegligent explanation for the collision'" (Kesick v Burns-Leader, 169 AD3d 1313, 1314 [2019], quoting Martin v LaValley, 144 AD3d 1474, 1477 [2016] [internal quotation marks and citations omitted]; see Tutrani v County of Suffolk, 10 NY3d 906, 908 [2008]; Warner v Kain, 162 AD3d 1384, 1384 [2018]; Bell v Brown, 152 AD3d 1114, 1114-1115 [2017]). While a "sudden and abrupt stop of the vehicle in front can constitute a sufficient explanation to overcome the inference of negligence" (Kesick v Burns-Leader, 169 AD3d at 1314 [internal quotation marks and citation omitted]), the law pertaining to all drivers requires that, "[w]hen approaching another vehicle from behind, a driver is required to maintain a reasonably safe rate of speed, maintain control of his or her vehicle and use reasonable care to avoid colliding with the other vehicle, which necessarily includes a duty to maintain a safe distance between the two vehicles" (Appollonia v Bonse, 92 AD3d 1170, 1171 [2012] [internal quotation marks, brackets and citations omitted]).
In support of their motion for summary judgment, the Shaw defendants rely upon, among other things, the allegations contained in plaintiff's complaint, her sworn deposition testimony and the deposition testimony from Shaw and Gibson. In her complaint, plaintiff alleged that the accident occurred when the front of Gibson's vehicle struck and rear-ended Shaw's vehicle that had suddenly stopped in front of Gibson, resulting in Shaw's vehicle then striking the rear of her vehicle. In her deposition, plaintiff testified that she was "creeping along" in stop-and-go traffic and had come to a full and complete stop, leaving "[a] couple of feet" between her car and the car in front of her, after which she felt a bump to her car, heard tires screech and then felt a "much harder" hit. In contrast, Gibson and Shaw both testified that plaintiff stopped abruptly, which plaintiff denied. According to Gibson, he saw Shaw's brake lights illuminate and, within seconds, heard the "tap" of one vehicle hitting another. Shaw testified, however, that even though plaintiff's car had stopped abruptly, he maintained a distance of one-to-two feet behind her and did not bump her car until Gibson's car rear-ended him. Gibson testified that his car was at least 10 feet behind Shaw's car and Shaw's car also "stopped really abruptly and that's how [the accident] happened."
Viewing this evidence in the light most favorable to plaintiff, the nonmoving party (see Bell v Brown, 152 AD3d at 1115), we find that factual discrepancies exist surrounding Shaw's own liability that preclude a favorable ruling on the Shaw defendants' motion seeking to hold Gibson solely liable for plaintiff's alleged injuries. Moreover, given the traffic conditions at the time of the accident and Shaw's duty to maintain a safe distance between his car and plaintiff's car in anticipation of sudden stops, the Shaw defendants have not established a nonnegligent explanation that would overcome the presumption of liability for the subject rear-end collision (see Kesick v Burns-Leader, 169 AD3d at 1314; Gitman v Martinez, 169 AD3d 1283, 1285-1286 [2019]; Warner v Kain, 162 AD3d at 1386). Accordingly, Supreme Court properly denied the Shaw defendants' motion for summary judgment seeking to hold Gibson solely liable for the subject accident. To the extent that we have not expressly addressed any of the Shaw defendants' remaining contentions, they are either academic in light of our decision or have been considered and found to be without merit.
Garry, P.J., Egan Jr., Mulvey and Devine, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: In her brief, plaintiff also argues that she suffered serious injuries under the permanent consequential limitation of use and 90/180-day categories of Insurance Law § 5102 (d) and asks for summary judgment on these claims. To the extent that Supreme Court granted that portion of the Shaw defendants' motion for summary judgment dismissing plaintiff's allegations that she suffered a serious injury under these two categories, plaintiff has not filed a cross appeal from Supreme Court's order in this regard. Accordingly, these contentions are not properly before us, as our authority to search the record and grant summary judgment to a nonmoving party "extends only to a cause of action or issue that is the subject of the motions before the court" (Schillaci v Sarris, 122 AD3d 1085, 1088 [2014] [internal quotation marks, ellipsis and citation omitted]).