Lemieux v Horn (2022 NY Slip Op 05739)

Lemieux v Horn

2022 NY Slip Op 05739

Decided on October 13, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 13, 2022

534291
[*1]David J. Lemieux, Appellant,
v
Alton E. Horn et al., Respondents.

Calendar Date:August 17, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Edelman, Krasin & Jaye, PLLC, Westbury (Aaron Fine of counsel), for appellant.
Smith, Sovik, Kendrick & Sugnet, PC, Syracuse (David M. Katz of counsel), for respondents.

Egan Jr., J.P.
Appeals (1) from an order of the Supreme Court (Jeffrey A. Tait, J.), entered June 29, 2021 in Broome County, which, among other things, granted defendants' cross motion for summary judgment dismissing the complaint, and (2) from an order of said court, entered February 17, 2022 in Broome County, which, upon reargument, adhered to its prior decision.
On November 3, 2016, in the City of Binghamton, Broome County, the 2011 Toyota Highlander plaintiff was driving was rear-ended by a 1998 Kenworth tractor trailer driven by defendant Alton E. Horn and owned by defendant Say Co Trucking, LLC. Plaintiff commenced this action to recover for serious injuries, within the meaning of Insurance Law § 5102 (d), that he allegedly sustained as a result of the accident. Following joinder of issue and discovery, plaintiff moved for partial summary judgment on the issue of defendants' negligence. Defendants cross-moved for summary judgment dismissing the complaint, arguing that plaintiff could not recover because he had not sustained a serious injury in the November 2016 accident as defined by Insurance Law § 5102. Although Supreme Court determined that Horn was at fault in the accident and granted plaintiff's motion for partial summary judgment as to liability, it further determined that plaintiff had not sustained a serious injury as required and, as a result, also granted defendants' cross motion for summary judgment dismissing the complaint. Plaintiff appeals from that order, as well as a subsequent order in which Supreme Court granted his motion for reargument and, upon reargument, adhered to its original decision.
We affirm. "Under New York's no-fault system of automobile insurance, a person injured in a motor vehicle accident may only recover damages if he or she sustained a serious injury" (Sul-Lowe v Hunter, 148 AD3d 1326, 1327 [3d Dept 2017] [internal quotation marks, ellipsis and citations omitted]; accord Altman v Shaw, 184 AD3d 995, 996 [3d Dept 2020]). A serious injury, as is relevant here, "includes a 'personal injury which results in' a 'permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than [90] days during the [180] days immediately following the occurrence of the injury or impairment'" (Noor v Fera, 200 AD3d 1366, 1367 [3d Dept 2021], quoting Insurance Law § 5102 [d]; see Scarincio v Cerillo, 195 AD3d 1266, 1266-1267 [3d Dept 2021]). The permanent consequential limitation and/or significant limitation of use categories require "objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing the plaintiff's present limitations to the normal function, purpose and use of the affected [*2]body organ, member, function or system," and the proof must show those limitations to be "more than mild, minor or slight" (Jones v Marshall, 147 AD3d 1279, 1280 [3d Dept 2017] [internal quotation marks, brackets and citations omitted]; accord Scarincio v Cerillo, 195 AD3d at 1267). Objective evidence, such as medically imposed limitations upon a plaintiff's daily activities, is also required to support a claim under the 90/180-day category, and self-serving assertions on that score will not suffice (see Rosenblum v Irby, 194 AD3d 1147, 1148 [3d Dept 2021]; Jones v Marshall, 147 AD3d at 1280-1281).
With those standards in mind, defendants, as the parties seeking summary judgment dismissing the complaint, were obliged to initially "establish[], through competent medical evidence, that plaintiff did not sustain a serious injury caused by the accident" (Altman v Shaw, 184 AD3d at 997 [internal quotation marks and citations omitted]; see Noor v Fera, 200 AD3d at 1367; Jones v Marshall, 147 AD3d at 1281). Plaintiff claimed that he had sustained a serious injury to his lumbar spine in the November 2016 accident. Defendants established via plaintiff's medical records, however, that he had been diagnosed with degenerative changes to his lumbar spine in 2002 and had long complained of lower back pain and radiculopathy that required medical treatment. Indeed, plaintiff's medical records show that he was undergoing treatment at the time of the November 2016 accident for what the records described as "debilitating" and "severe" back and radiating leg pain, including physical therapy to address difficulties walking and performing his usual activities that arose following a May 2016 golf injury.[FN1] In addition, the records showed that plaintiff had undergone several MRIs of his lumbar spine over the years, and that a February 2017 MRI conducted after the November 2016 accident found him to have "[e]ssentially stable" degenerative changes as compared to an MRI conducted in August 2016, before the accident.
In addition to those medical records, defendants further produced the affidavit of Thomas R. Haher, an orthopedic surgeon who reviewed plaintiff's medical records and radiological studies. Haher opined that, in light of plaintiff's documented lumbar spine problems prior to the accident and the fact that the August 2016 and February 2017 MRIs showed neither any "significant change" in his condition nor "any new or exacerbated injury to his lumbar spine," the medical proof reflected that "the subject accident did not cause or exacerbate [p]laintiff's pre-existing low back conditions." Notwithstanding plaintiff's suggestion to the contrary, we agree with Supreme Court that Haher's opinion and the "documented history of extensive preexisting conditions and injuries that . . . produced the same types of symptoms" plaintiff attributed to the November 2016 accident satisfied defendants' initial burden (Altman v Shaw, 184 AD3d at 997 [internal quotation marks and citations [*3]omitted]; see Noor v Fera, 200 AD3d at 1367; Eason v Blacker, 155 AD3d 1180, 1181 [3d Dept 2017]).
The burden accordingly shifted to plaintiff to raise a triable issue of fact regarding the existence of a serious injury via "objective medical evidence distinguishing [his] preexisting condition from the injuries claimed to have been caused by [the November 2016] accident" (Falkner v Hand, 61 AD3d 1153, 1154 [3d Dept 2009]; accord Thomas v Ku, 112 AD3d 1200, 1201 [3d Dept 2013]; see Pommells v Perez, 4 NY3d 566, 574 [2005]; Franchini v Palmieri, 1 NY3d 536, 537 [2003]; Noor v Fera, 200 AD3d at 1368; Ostroll v Nargizian, 97 AD3d 1076, 1077 [3d Dept 2012]). Plaintiff endeavored to do so through his testimony as to how his daily activities were impaired after the November 2016 accident, and additionally pointed to medical records reflecting that he had back pain after the accident that required medical treatment and, in June 2017, decompression surgery on his lumbar spine. He further provided the report of Ali E. Guy, a physical medicine and rehabilitation specialist who recited how he had reviewed plaintiff's medical records and conducted a March 2021 physical examination of plaintiff. Guy then opined, in conclusory fashion, that plaintiff's "prior preexisting conditions" were "pushed . . . over the edge" by the accident and necessitated the surgery. What plaintiff did not provide was objective medical evidence distinguishing his preexisting back condition from its purported exacerbation in the November 2016 accident — such as, for example, proof tying the diminished ranges of motion observed by Guy in March 2021 to the November 2016 accident rather than plaintiff's prior degenerative back problems — or demonstrating a causal link between any exacerbation and the self-reported limitations on plaintiff's activities for purposes of his 90/180-day claim (see Gaddy v Eyler, 79 NY2d 955, 957-958 [1992]; Vanalstyne v Gordon, 180 AD3d 1140, 1143 [3d Dept 2020]; Eason v Blacker, 155 AD3d at 1183; Dudley v Imbesi, 121 AD3d 1461, 1462-1463 [3d Dept 2014]; Davis v Cottrell, 101 AD3d 1300, 1303-1304 [3d Dept 2012]). Thus, as plaintiff failed to raise a material issue of fact as to whether any exacerbation of his preexisting condition caused by the November 2016 accident constituted a serious injury, Supreme Court properly granted defendants' cross motion for summary judgment dismissing the complaint.
To the extent not addressed above, plaintiff's contentions have been examined and lack merit.
Clark and McShan, JJ., concur.
Reynolds Fitzgerald, J. (dissenting).
We respectfully dissent.
It is beyond cavil that summary judgment is a drastic remedy that deprives a litigant of his or her day in court; as such, it should not be granted where there is any doubt as to the existence of triable issues of fact (see McFadden v State of New York, 138 AD3d 1167, 1167 [3d Dept 2016], appeal dismissed 28 NY3d 947 [2016]; Benizzi v Bank of the Hudson, 50 AD3d 1372, 1373 [*4][3d Dept 2008]). Moreover, it is the function of the court on summary judgment not to resolve factual issues, but to determine their existence (see Smero v City of Saratoga Springs, 160 AD3d 1169, 1170 [3d Dept 2018]; Lacasse v Sorbello, 121 AD3d 1241, 1242 [3d Dept 2014]). "When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof" (Carpenter v Nigro Cos., Inc., 203 AD3d 1419, 1420-1421 [3d Dept 2022] [internal quotation marks and citations omitted]; see Aretakis v Cole's Collision, 165 AD3d 1458, 1459 [3d Dept 2018]). The movant on a summary judgment motion bears the initial burden of establishing his or her entitlement to judgment as a matter of law, and it is only once that burden has been sustained that the burden shifts to the nonmovant to come forward with a material issue of fact requiring trial (see Durr v Capital Dist. Transp. Auth., 198 AD3d 1238, 1239-1240 [3d Dept 2021]; Vickers v Parcells, 198 AD3d 1160, 1161 [3d Dept 2021]). Furthermore, "[t]he resolution of justiciable issues by trial is preferred over summary disposition" (Hall v Miller & Assoc., 167 AD2d 688, 690 [3d Dept 1990]). The foregoing is an abbreviated recitation of many of the principles of summary judgment. These principles are recited so often they risk becoming boilerplate — and, as with boilerplate, the actual meaning behind the words can become lost. This case provides an opportunity to reassert the meaning behind the words.
The facts regarding the accident are not in dispute. Defendant Alton E. Horn was driving a 1998 Kenworth tractor trailer at a speed of 45 miles per hour when he rear-ended plaintiff. While we could find no postaccident photographs of the vehicles in the record, Horn stated that the impact bent his bumper and pushed the hood up on his tractor trailer, and plaintiff referred to his vehicle as "totaled." Plaintiff was removed from the scene by ambulance and was administered morphine en route to the hospital. Although plaintiff was released from the hospital that night, he reported that he was bedridden for the next 10 days. During oral argument, defendants' counsel urged us to ignore these facts attendant to the actual accident, however we could find no case law that mandates that the Court leave its common sense at the door. Simply put, the facts do matter. Finally, it is undisputed that, although plaintiff had not undergone surgery to alleviate the discomfort in his lower back before the accident, he has since.
As to the expert testimony, we disagree that defendants met their initial burden of establishing that plaintiff did not sustain a serious injury. It is undisputed that plaintiff had numerous preexisting injuries. However, every first-year law student is aware of the eggshell plaintiff axiom, namely that the defendant must take the plaintiff as he or she finds him, i.e., the plaintiff [*5]may recover to the extent that the accident aggravated his or her preexisting conditions (see Schuster v Brimstone Hill Corp., 64 Fed Appx 316, 318 [2d Cir 2003]; Matter of Tobin v Steisel, 64 NY2d 254, 259 [1985]). Defendants' expert, orthopedic surgeon Thomas R. Haher, opined in his affidavit that plaintiff's pre- and postaccident MRIs of the lumbar spine were "substantially the same" and that there are "no significant change[s]" in the findings of both. This begs the question: what is Haher's definition of substantial? Of significant? He does not address the differences, and instead focuses on plaintiff's preexisting injuries. We find that this conclusory affidavit fails to satisfy defendants' initial burden, thus it relieves plaintiff from the obligation of any response (see McIntyre v Village of Liberty, 151 AD3d 1367, 1368-1369 [3d Dept 2017]; Vandetta v Adams, 121 AD3d 1328, 1330 [3d Dept 2014]). Additionally, unlike the majority, we find plaintiff's postaccident statements to the effect that the accident "ha[s] fixed [his] low back" to be obviously facetious in nature and entitled to no weight (see Colvin v Giruzzi, 261 AD2d 697, 698 [3d Dept 1999]; Michaels v Travelers Indem. Co., 257 AD2d 828, 830-831 [3d Dept 1999]).
However, even if defendants met their burden, plaintiff's evidence, when viewed in the light most favorable to him, is sufficient to raise a material question of fact as to whether plaintiff suffered a serious injury. Significantly, plaintiff's expert, physical medicine and rehabilitation specialist Ali E. Guy, affirmed that he examined plaintiff and reviewed plaintiff's records from both before and after the November 2016 accident. After doing so, he finds it "clearly evident that this patient had prior preexisting conditions to the lumbar spine." 
However, he further finds an exacerbation of these injuries;[FN2] opines that the accident caused new, distinct and identifiable injuries to plaintiff in the form of an L2-L3 herniation and T12-L1 disc protrusion; and further opines that "this accident of November 3, 2016, pushed [plaintiff] over the edge, which necessitated the lumbar surgery." The majority takes issue with Guy's turn of phrase, finding it conclusory. Given the (again undisputed) contents of the submitted medical records that Guy avows he reviewed, which clearly demonstrate — by way of numerical percentages — the decline in plaintiff's range of motion vis-À-vis his lower back, together with the entirety of his report, plaintiff should not suffer the draconian consequence of the loss of his cause of action for a less-than-legalese choice of words. Guy's objective medical findings, coupled with his findings that another lumbar surgery is necessary and that plaintiff sustained a permanent loss of use of the musculoskeletal system in the lumbar spine, is sufficient to create a question of fact as to whether plaintiff suffered a serious injury attributable to the motor vehicle accident (see Moat v Kizale, 149 AD3d 1308[*6], 1315 [3d Dept 2017]; Putnam v Sysco Corp., 101 AD3d 1571, 1573 [3d Dept 2012]; MacMillan v Cleveland, 82 AD3d 1388, 1390 [3d Dept 2011]). Accordingly, we would not have granted defendants' cross motion for summary judgment dismissing the complaint.
Pritzker, J., concurs.
ORDERED that the orders are affirmed, with costs.

Footnotes

Footnote 1: Notably, the records from plaintiff's postaccident visits to the physical therapist note that his lower back pain and sciatica was "much better" and include plaintiff's speculation that the accident might "have fixed [his] low back."

Footnote 2: The preexisting injuries consisted of spinal spondylosis, disc bulge at T10-T11 and T12 through S1, and L4-L5 disc protrusion with disc extrusion.