Cherfilus v McAlmon (2025 NY Slip Op 51603(U))

[*1]

Cherfilus v McAlmon

2025 NY Slip Op 51603(U)

Decided on October 10, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 10, 2025

Supreme Court, Kings County

Artelien Cherfilus, Plaintiff,

against

Kevin McAlmon and KEYA DASHAWN HACKETT, Defendants.

Index No. 530607/2023

Rubenstein & Rynecki, Esqs., New York City (Mark Battipaglia of counsel) for Plaintiff.

Law Offices of Jennifer S. Adams, Williamsville (Michael De-Guida-Derise of counsel), for Defendants.

Aaron D. Maslow, J.

The following numbered papers were used on this motion:

Defendant's Submission in Support of Motion — NYSCEF Document Nos. 17-24
Plaintiff's Submission in Opposition to Motion — NYSCEF Document Nos. 37-44
Defendant's Submission in Reply to Opposition to Motion — NYSCEF Document No. 49
Upon the foregoing papers, having heard oral argument, and due deliberation having been had, the within matter is determined as follows.

Background

Plaintiff brought suit against Defendants for personal injuries allegedly sustained in a June 9, 2023 motor vehicle accident. Per Plaintiff's bill of particulars, he sustained injuries as [*2]follows:

-Lumbar sprain
-Right shoulder sprain
-Right knee sprain
-Suprapatellar effusion of right knee joint (NYSCEF Doc No. 22 ¶ 9).
As per Insurance Law § 5104 [a]), "Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss."

Serious injury is defined though nine statutory categories:

a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment [last category known as "90/180"] (Insurance Law § 5102 [d]).

Plaintiff's bill of particulars failed to comply with the requirement set forth in CPLR 3043, as follows:

(a) Specified particulars. In actions to recover for personal injuries the following particulars may be required:

. . .

(6) Statement of the injuries and description of those claimed to be permanent, and in an action designated in subsection (a) of section five thousand one hundred four of the insurance law, for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, in what respect plaintiff has sustained a serious injury, as defined in subsection (d) of section five thousand one hundred two of the insurance law, or economic loss greater than basic economic loss, as defined in subsection (a) of section five thousand one hundred two of the insurance law (CPLR 3043 [a] [6]).

While Plaintiff's complaint did not specify which categories (definitions) of serious injury his injuries measured up to, there were allegations that his injuries were permanent:

37. That as a result of the aforesaid contact, plaintiff ARTELIEN CHERFILUS was injured.

. . .

39. That by reason of the foregoing and the negligence of the said defendants, this plaintiff, ARTELIEN CHERFILUS, sustained serious, severe, and permanent injuries to his limbs and body, still suffers and will continue to suffer for some time, great physical and mental pain and serious bodily injury; became sick, sore, lame and disabled and so remained for considerable length of time.

40. That by reason of the wrongful, negligent and unlawful actions of the defendants, as aforesaid, the plaintiff, ARTELIEN CHERFILUS, sustained serious injuries as defined in the Insurance Law of the State of New York, and has sustained economic loss greater than basic economic loss as defined in said Insurance Law.

41. That by reason of the foregoing and the negligence of the said defendants, this plaintiff, ARTELIEN CHERFILUS, is informed and verily believes his aforesaid injuries are permanent and that he will permanently suffer from the effects of his aforesaid injuries and he will be caused to suffer permanent embarrassment and continuous pain and inconvenience. (NYSCEF Doc No. 20 ¶¶ 37-41 [emphasis added].)

Defendants move for summary judgment dismissing the complaint on the asserted ground that Plaintiff's injuries do not satisfy the threshold of serious injury as defined in the statutory categories enumerated in Insurance Law § 5102 (d) (see NYSCEF Doc No. 17).

General Discussion

Summary judgment, including in a motor vehicle accident case, is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Andre v Pomeroy, 35 NY2d 361 [1974]).

The issue of whether a claimed injury falls within the statutory definition of "serious injury" is a question of law for the Court, which may be decided on a motion for summary judgment (see Licari v Elliott, 57 NY2d 230 [1982]). A moving defendant bears the initial burden of establishing, by the submission of evidentiary proof in admissible form, a prima facie case that the plaintiff has not suffered a serious injury proximately resulting from the subject motor vehicle accident (see Toure v Avis Rent A Car Sys., Inc., 98 NY2d 345 [2002]; Gaddy v Eyler, 79 NY2d 955 [1992]). A failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see Curiale v Delfavero, 211 AD3d 905 [2d Dept 2022]).

In order to make out a prima facie case that a plaintiff has failed to achieve serious injury as defined in Insurance Law § 5102 (d), a defendant must rule out all categories claimed in the bill of particulars (see Diaz v Nightingale Bakery & Beverage Distrib., Inc., — AD3d —, 2025 NY Slip Op 04630 [2d Dept 2025]; Santos v Fiktus, 232 AD3d 698 [2d Dept 2024]; Curiale v Delfavero, 211 AD3d 905), and/or must establish that whatever injuries are claimed by the [*3]plaintiff did not proximately result from the subject motor vehicle accident (see Lemieux v Horn, 39 NY3d 1108 [2023], affg 209 AD3d 1100 [3d Dept 2022]; Franklin v Gareyua, 29 NY3d 925 [2017], affg 136 AD3d 464 [1st Dept 2016]; Rivera v Fernandez & Ulloa Auto Group, 25 NY3d 1222 [2015], affg 123 AD3d 509 [1st Dept 2014]).

If the defendant has made such a showing that the plaintiff has not suffered a serious injury from the subject motor vehicle accident as a matter of law, the burden shifts to the plaintiff to submit evidence in admissible form to establish that indeed there are material issues of fact regarding serious injury (see Franchini v Palmieri, 1 NY3d 536 [2003]; Grasso v Angerami, 79 NY2d 813 [1991]).

In assessing whether claimed injuries meet the serious injury threshold it is well worth recalling that

Enactment of the Comprehensive Motor Vehicle Insurance Reparations Act (L 1973, ch 13 [eff Feb. 1, 1974]), served the dual purpose of assuring that accident victims received compensation for their economic loss and of restricting the cost of rising automobile insurance policy premiums (Zoldas v. Louise Cab Corp., 108 AD2d 378, 380). However, limitations were placed on the right to sue, namely, that only those who suffered a serious injury were entitled to sue to recover their damages. In 1977, "serious injury" was redefined by the Legislature to counter the fact that so many individuals were able to meet the original statutory definition and the purpose of the legislation, i.e., reducing automobile accident litigation, was being subverted (L 1977, ch 892; see, mem of State Executive Dept, 1977 McKinney's Session Laws of NY, at 2450).

To allow cases such as this one to proceed to trial, where there was no proof submitted as to the seriousness of the injury, would simply perpetuate a system of unnecessary litigation, a result completely at odds with the Legislature's intent. Thus, the defendants' motion for summary judgment dismissing the complaint should have been granted. (Sanpietro v McCoy, 130 AD2d 648, 649 [2d Dept 1987].)

Courts bear a responsibility when encountering summary judgment motions invoking the serious injury mandate of the legislature:

The courts [are] responsible for vetting serious injury automobile cases by application of basic summary judgment principles to avoid unnecessary jury trials where the injury is clearly minor (see Zecca v Riccardelli, supra at 33-34, citing Licari v Elliott, supra at 237). Viewed in this context, this Court held that if summary judgment in favor of plaintiffs on default automatically satisfied the requirements of the serious injury threshold, courts would be abdicating their responsibility under the No-Fault Law by allowing recoveries for minor injuries (see Zecca v Riccardelli, supra at 34-35). (Van Nostrand v Froehlich, 44 AD3d 54, 60 [2d Dept 2007].)

Defendants' Prima Facie Case

In moving for summary judgment on the issue of serious injury, a defendant need not address statutory categories which are not claimed in the plaintiff's bill of particulars (see Walker v Metropolitan Transp. Auth., 230 AD3d 1268 [2d Dept 2024]; Noor v Fera, 200 AD3d 1366 [3d Dept 2021]; Boettcher v Ryder Truck Rental, Inc., 133 AD3d 625 [2d Dept 2015]; Quintana v Arena Transp., Inc., 89 AD3d 1002 [2d Dept 2011]; Lee v Laird, 66 AD3d 1302 [3d Dept 2009]; Ali v Mirshah, 41 AD3d 748 [2d Dept 2007]). This includes the significant limitation category (see Lee v Laird, 66 AD3d 1302). It also includes the "90/180" category (see Walker v Metropolitan Transp. Auth., 230 AD3d 1268; Quintana v Arena Transp., Inc., 89 AD3d 1002; Ali v Mirshah, 41 AD3d 748). As noted above, Plaintiff did not claim any serious injurious categories in his bill of particulars. Plaintiff's counsel stated that a supplemental bill of particulars asserting certain categories was served upon Defendants and annexed as Exhibit 7 (see NYSCEF Doc No. 37 at 6), but no such document appears in the record; counsel conceded this at oral argument. Hence, arguments by Plaintiff with respect to significant limitation and 90/180 (see generally NYSCEF Doc No. 37) are to no avail.

However if an allegation of sustaining an injury in the nature of a serious injury can be discerned from the complaint, the court's consideration of that category is appropriate (see Epstein v MTA Long Island Bus, 161 AD3d 821 [2d Dept 2018]). As such, since Plaintiff's complaint alleged "permanent injuries," and the bill of particulars specified injuries to the lumbar spine, right shoulder, and right knee, this Court deems plaintiff to have alleged the three categories of serious injury which subsume permanency: dismemberment; permanent loss of use of a body organ, member, function or system; and permanent consequential limitation of use of a body organ or member.[FN1]
Significant limitation of use of a body function or system does not entail permanency (see Strong v Sigman, 224 AD3d 932 [2d Dept 2024]) but, in any event, this category was not claimed (see Lee v Laird, 66 AD3d 1302).

In support of their motion, Defendants rely on their medical expert, Dr. Jeffrey Passick, M.D., a Board-certified orthopedic surgeon. He examined Plaintiff's lumbar spine, right shoulder, and right knee. Since these body parts were capable of movement, Defendants made a prima facie showing that Plaintiff did not sustain dismemberment or a permanent loss of use of a body organ, member, function or system, the latter category requiring there to be a total lose (see Oberly v Bangs Ambulance, 96 NY2d 295 [2001]).

Remaining is the category of permanent consequential limitation of use of a body organ or member. Range of motion testing of the lumbar spine by Dr. Passick yielded complete range of motion, Dr. Passick setting forth the degrees attained and the normal degrees (see NYSCEF Doc No. 24 at 4). Range of motion in the right shoulder was also complete with respect to abduction, adduction, flexion, extension, and external rotation, but motion on internal rotation was limited to 70 out of 80 degrees. In the right knee, extension was normal but flexion was at 130 out of 150 degrees. The respective limitations of 12.5% in right shoulder internal rotation and 13.3% in right knee flexion are of no consequence since case law provides that low-level limitations are insignificant (see Cebron v Tuncoglu, 109 AD3d 631 [2d Dept 2013] [10%]; [*4]McLoud v Reyes, 82 AD3d 848 [2d Dept 2011] [12%]; Il Chung Lim v Chrabaszcz, 95 AD3d 950 [2d Dept 2012] [13%]; Chinnici v Brown, 295 AD2d 465 [2d Dept 2002] [10-15%]; Arrowood v Lowinger, 294 AD2d 315 [2d Dept 2002] [2-4%, 5-10%, and 7-14%]; Waldman v Dong Kook Chang, 175 AD2d 204 [2d Dept 1991] [15%]). References by Plaintiff to Dr. Passick's recordation of limitations (see NYSCEF Doc No. 37 at 8), therefore, are rejected.

Plaintiff argued that Defendants' motion failed to refer to MRI results (see id. at 11), but this is irrelevant inasmuch as Dr. Passick personally examined Plaintiff (see Hayes v Vasilios, 96 AD3d 1010 [2d Dept 2012] [defendants' examining doctor's report sufficed to satisfy prima facie burden as to alleged injuries even though she didn't review plaintiff's medical records since she performed objective tests on examination showing full range of motion]; Kearse v New York City Tr. Auth., 16 AD3d 45 [2d Dept 2005] [defense expert not required to refer to cited MRI reports if he personally examined plaintiff and finds full range of motion and lack of disabilities]).

Dr. Passick's affirmed IME report made out for Defendants a prima facie case that Plaintiff did not sustain a permanent consequential limitation of use of a body organ or member (see Toure v Avis Rent A Car Sys., Inc., 98 NY2d 345; Gaddy v Eyler, 79 NY2d 955). The burden shifted to Plaintiff to rebut Defendant's showing on this category and on the dismemberment and permanent loss ones.

Plaintiff's Opposition

Plaintiff relies on various medical records and reports, as well as on his own affidavit in an attempt to substantiate that there is an issue of fact concerning serious injury. In reviewing them it is clear that no body part was dismembered. Neither did Plaintiff sustain total loss of any body part. The Court will next assess whether there is an issue of fact as to permanent consequential limitation of use of a body organ or member.

The records from Kings County Hospital lack any range of motion testing and, therefore, do not establish a permanent consequential limitation (see Terranova v Acosta, 136 AD3d 710 [2d Dept 2016]; Quintana v Arena Transp., Inc., 89 AD3d 1002).

An affirmation of treating doctor Nunzio Saulle was submitted, followed by examination reports. Dr. Saulle is Board-certified in physical medicine and rehabilitation. The Court finds it useful to set forth range of motion findings made by Dr. Saulle at his examinations, because it is range of motion testing which identifies limitations (see Toure v Avis Rent A Car Sys., Inc., 98 NY2d 345; Terranova v Acosta, 136 AD3d 710; Pierre v Nanton, 279 AD2d 621 [2d Dept 2001]):

Lumbar Spine

Right Shoulder

Right Knee

July 3, 2023

Flexion 75/90 degrees
[*5]

(16.7% limitation)

Flexion 155/180 degrees

 (13.9% limitation)

Flexion 125/140 degrees

(10.7% limitation)

Extension 30/30 degrees

 (completely normal)

Abduction 130/180

degrees

(27.8% limitation)

Extension "full"

Right and left lateral

bending 30/35 degrees

(14.3% limitation)

External rotation 90/90

 degrees

 (completely normal)

August 17, 2023

Flexion 80/90 degrees

(11.1% limitation)

Flexion 160/180 degrees

 (11.1% limitation)

Flexion 130/140 degrees

(7.1% limitation)

Extension 30/30 degrees

 (completely normal)

Abduction 150/180

degrees

(16.7% limitation)

Extension "full"

Right and left lateral

bending 30/35 degrees

(14.3% limitation)

External rotation 90/90

 degrees

 (completely normal)

October 11, 2023

Flexion 90/90 degrees

 (completely normal)

Flexion 125/180 degrees

(30.6% limitation)

Flexion 120/140 degrees

(14.3% limitation)

Extension 30/30 degrees

 (completely normal)

Abduction 135/180

degrees

(25.0% limitation)

Extension "full"

Right and left lateral

bending 30/35 degrees

(14.3% limitation)

December 13, 2023

Flexion 90/90 degrees

 (completely normal)

Flexion 160/180 degrees

 (11.1% limitation)

Extension 30/30 degrees

 (completely normal)

Abduction 140/180

degrees

(22.2% limitation)

Right lateral bending

30/35 degrees

(14.3% limitation)

External rotation 90/90

 degrees

(completely normal)

Left lateral bending

35/35 degrees

(completely normal)

Internal rotation "mildly

 restricted"

February 12, 2024

Flexion 90/90 degrees

 (completely normal)

Flexion 170/180 degrees

 (5.6% limitation)

[*6]

Extension 30/30 degrees

 (completely normal)

Abduction 170/180

 degrees

 (5.6% limitation)

Right and left lateral

bending 35/35 degrees

 (completely normal)

External rotation 90/90

 degrees

(completely normal)

Internal rotation "mildly

restricted"

April 8, 2024

Flexion 90/90 degrees

 (completely normal)

Flexion 155/180 degrees

 (13.9% limitation)

Flexion 125/140 degrees

(10.7% limitation)

Extension 30/30 degrees

 (completely normal)

Abduction 180/180

 degrees

(completely normal)

Extension "full"

Right and left lateral

bending 35/35 degrees

 (completely normal)

External rotation 90/90

 degrees

 (completely normal)

Internal rotation 50/50

 degrees

(completely normal)

August 7, 2025

Flexion 90/90 degrees

 (completely normal)

Flexion 140/180 degrees

 (22.2% limitation)

Extension 30/30 degrees

 (completely normal)

Abduction 160/180

degrees

(11.1% limitation)

Right lateral bending

 30/35 degrees (14.3%

limitation)

External rotation 90/90

 degrees

 (completely normal)

Left lateral bending

 35/35 degrees

(completely normal)

Internal rotation 30/70

 degrees

(57.1% limitation)

As discussed supra at 5, Second Department case law has held that that low-level limitations are insignificant (see Cebron v Tuncoglu, 109 AD3d 631 [10%]; McLoud v Reyes, 82 AD3d 848 [12%]; Il Chung Lim v Chrabaszcz, 95 AD3d 950 [13%]; Chinnici v Brown, 295 AD2d 465 [2d Dept 2002] [10-15%]; Arrowood v Lowinger, 294 AD2d 315 [2-4%, 5-10%, and 7-14%]; Waldman v Dong Kook Chang, 175 AD2d 204 [15%]). The Third Department has held that "approximately 16% or less . . . could be considered insignificant or inconsequential" (McIntyre v Salluzzo, 159 AD3d 1547, 1548 [3d Dept 2018]).

At what point does a limitation become significant? This Court has been unable to locate [*7]Second Department decisions regarding limitations between 15% and 20%, but the Court of Appeals has held that 20% may be significant (Dufel v Green, 84 NY2d 795 [1995]; see also Kholdarov v Hyman, 165 AD3d 1087 [2d Dept 2018]). Accordingly, this Court finds that limitations of 20% or more are significant, i.e., consequential and those less than that are not. The limitations found by Dr. Saulle which exceeded 20% are bolded in the chart above.

To meet the level of permanent consequential limitation, a recent examination recording a consequential limitation is necessary (see Sukalic v Ozone, 136 AD3d 1018 [2d Dept 2016]; see also Keena v Trappen, 294 AD2d 405 [2d Dept 2002]). Dr. Saulle did examine Plaintiff recently, to wit, on August 7, 2025. However, in Thrall v City of Syracuse (60 NY2d 950 [1993], revg on dissenting op below, 96 AD2d 715 [4th Dept 1983]), the Court of Appeals held that the testimony of a plaintiff's doctor that plaintiff had full range of motion three months after the accident refutes a claim that that injuries significantly limited use of the arm and shoulder. And, in Pommels v Perez (4 NY3d 566 572 [2005]), the Court held that summary dismissal may be appropriate where there are intervening factors such as a gap in treatment or an intervening medical problem. There is a concern that once there is full range of motion, a relapse should be explained; so too should inconsistent test results (see Cabrera v Apple Provisions, Inc., 151 AD3d 594 [1st Dept 2017] [January accident, full range of motion in February, and limitations a month later]; McLoud v Reyes, 82 AD3d 848 [2d Dept 2011]; Sharma v Diaz, 48 AD3d 442 [2d Dept 2008]; Antorino v Mordes, 202 AD2d 528 [2d Dept 1994] [plaintiff's physician's assertion that plaintiff continued to experience restriction of motion in her lower back directly contradicted same physician's prior finding that lumbosacral range of motion was "near full" with only "mild tenderness" in the surrounding musculature]).

The only consequential limitations (20% or more) noted by Dr. Saulle were in the right shoulder. When first examined, on July 3, 2023, Plaintiff had a 27.8% limitation in abduction, yet by August 17, 2023, it was no longer consequential, as there was only a 16.7% limitation. Yet, on October 11, 2023, abduction's limitation was at 25.0%, and now flexion, which had minor limitations, was limited by 30.6%. By February 12, 2024, the left shoulder was almost completely normal; same for April 8, 2024. Startlingly though, at the recent, August 7, 2025 examination, flexion was reportedly limited by 22.2% and internal rotation at 57.1%. All along, internal rotation had not been examined, was mildly restricted, or completely normal. In light of these discrepancies, Dr. Saulle was required to explain why all of a sudden, after a lengthy period of normality and minor restrictions, limitations in the right shoulder jumped up. He failed to do so. Coupled with Dr. Saulle's lack of findings of consequential limitations in the lumbar spine and right knee, his recent, August 7, 2025 examination is insufficient to rebut Dr. Passick's IME and demonstrate material issues of fact regarding permanent consequential limitation of use of a body organ or member (see Thrall v City of Syracuse, 60 NY2d 950, revg on dissenting op below, 96 AD2d 715; Antorino v Mordes, 202 AD2d 528).

Plaintiff also relies on an affirmation and examination reports from Dr. Dov Berkowitz, an orthopedic surgeon (see NYSCEF Doc No. 43). It is first noted that neither of the examination reports, dated December 18, 2023 and January 29, 2024, were affirmed. As such, they are not admissible (see Grasso v Angerami, 79 NY2d 813 [1991]; Quintana v Arena Transp., Inc., 89 AD3d 1002). While Dr. Berkowitz's affirmation dated September 11, 2025 [*8]purports to certify the examination reports, this does not cure the deficiency (see Washington v Mendoza, 57 AD3d 972 [2d Dept 2008]).

In any event, Dr. Berkowitz did not submit recent examination findings so therefore, his affirmation and reports do not show an issue of fact as to permanent consequential limitation of use of a body organ or member (see Sukalic v Ozone, 136 AD3d 1018). Further, nothing indicates that Dr. Berkowitz's recorded ranges of motion measurements were objectively ascertained through a goniometer or inclinometer (see Cosme-Almandoz v Alejandrino, — AD3d —, 2025 NY Slip Op 04626 [2d Dept 2025]; Gonzalez v Cohn, 224 AD3d 667 [2d Dept 2024]; Dinc v Shalesi, 208 AD3d 558 [2d Dept 2022]; Nicholson v Kwarteng, 180 AD3d 695 [2d Dept 2020]; Gersbeck v Cheema, 176 AD3d 684 [2d Dept 2019]).

Finally, with respect to both Dr. Berkowitz and Dr. Saulle, Dr. Berkowitz's recordation on December 18, 2023 of right shoulder external rotation of 70/90 degrees (22.2% limitation) conflicts with Dr. Saulle's recordation of 90/90 degrees (completely normal) on December 13, 2023, six days earlier, which only goes to confirm the need for Plaintiff to have submitted an explanation as to how the right shoulder suddenly showed consequential limitations on August 7, 2025. On December 18, 2023, Dr. Berkowitz wrote that flexion was at 160/180 degrees (11.1% limitation) and internal rotation was at 60/70 degrees (14.3% limitation), whereas the respective limitations balloon to 22.2% and 57.1% respectively on Dr. Saulle's August 7, 2025 report. None of this was explained (see Thrall v City of Syracuse, 60 NY2d 950, revg on dissenting op below, 96 AD2d 715; Antorino v Mordes, 202 AD2d 528).

Dr. Berkowitz's affirmation and reports are unavailing to Plaintiff.

In addition, Plaintiff himself submitted an affidavit (see NYSCEF Doc No. 39). It fails to show that there is an issue of fact as to permanent consequential limitation of use of a body organ or member, since competent medical evidence is required.

Certain other arguments of Plaintiff are rejected. With respect to there being herniated discs, such a condition does not alone make out a permanent consequential limitation (see Pommels v Perez, 4 NY3d 566; Ranford v Tim's Tree & Lawn Service, Inc., 71 AD3d 973 [2d Dept 2010]; Kearse v New York City Tr. Auth., 16 AD3d 45 [2d Dept 2005]). The same applies to shoulder tears (see Washington v Mendoza, 57 AD3d 972). And certainly pain in and of itself does not either (see Scheer v Koubek, 70 NY2d 678 [1987]; Canner v Diamond, 187 AD3d 1127 [2d Dept 2020]).

Plaintiff having failed to rebut Defendant's evidence sufficiently to bear out that there is an issue of fact to place before a jury concerning serious injury, Defendant's motion for summary judgment dismissing the complaint must be granted.

Conclusion

Defendants' motion for summary judgment dismissing Plaintiff's complaint is GRANTED. The complaint is hereby dismissed, and the Clerk shall enter judgment to that effect.

Footnotes

Footnote 1:Death, of course, is also of a permanent nature. However, Plaintiff is alive.