■ Jason McEnaney, Appellant, v State of New York et al., Respondents. (Claim No. 91564.) [700 NYS2d 258] —Spain, J. Appeal from an order of the Court of Claims (Benza, J.), entered August 10, 1998, which granted the State's motion for summary judgment dismissing the claim.

On December 14, 1994, Ralph Tortorici entered a lecture hall on the campus of the State University of New York at Albany (hereinafter SUNYA) where he was enrolled as a student. Brandishing a gun, he ordered the professor to call certain elected public officials and the media. The professor told Tortorici he did not have a phone available to make the calls, and was permitted to leave the lecture hall where he immediately summoned police from a phone in the adjacent audio-visual center. Tortorici proceeded to hold the students in the lecture hall hostage at gunpoint for approximately two hours and directed threatening remarks at some of them, including claimant. A spokesperson for the massive assemblage of law enforcement personnel and school officials outside the lecture hall communicated with Tortorici via microphones hung behind a large screen in the lecture hall. When Tortorici became distracted by a noise, claimant attempted to disarm him by grabbing the gun and pushing him down; the gun discharged bullets striking claimant and causing serious injuries, some of which are permanent. Several other students thereafter assisted claimant in successfully disarming Tortorici, who was taken into police custody and ultimately convicted of assault in the first degree, four counts of kidnapping in the second degree and other charges (*see, People v Tortorici,* 92 NY2d 757, *cert denied* — US —, 120 S Ct 94, 145 L Ed 2d 80).

Claimant thereafter instituted this negligence action against the State, the State University of New York and SUNYA (hereinafter collectively referred to as the State) alleging the State was negligent in its ownership, operation, control and supervision of SUNYA; in allowing Tortorici to assault claim-

ant; in permitting him to carry a loaded weapon onto SUNYA property; in allowing him to remain a student at SUNYA and to enter school property; in failing to properly protect the safety of students and particularly claimant or to warn them regarding Tortorici; and that this negligence was the proximate cause of claimant's injuries. Specifically, claimant alleged that SUNYA officials knew (or should have known) that Tortorici had violent, unbalanced, irrational propensities, and that they were negligent in failing to supervise him and in failing to expel him or to adopt rules to prevent such persons from remaining at SUNYA.

Following extensive discovery, the Court of Claims granted the State's motion for summary judgment and dismissed the complaint, finding that there was no special relationship between claimant and the State so as to impose a specific duty upon the State to protect claimant in the performance of its provision of security. The Court of Claims rejected claimant's attempt to premise his claim upon the State's failure to perform its proprietary function as a landowner. Claimant now appeals.

We affirm. The dispositive inquiry on this appeal is whether the particular acts of negligence alleged by claimant occurred during the State's fulfillment of a governmental function, as the State contends, or in its proprietary capacity as a landowner, as claimant urges. This inquiry is determinative because the law is well settled that public entities are "immune from negligence claims arising out of the performance of their governmental functions, including police protection, unless the injured person establishes a special relationship with the entity, which would create a specific duty to protect that individual, and the individual relied on the performance of that duty" (*Miller v State of New York*, 62 NY2d 506, 510; *see, Cuffy v City of New York*, 69 NY2d 255; *Pascarella v City of New York*, 146 AD2d 61, 67, *lv denied* 74 NY2d 610).

This special duty rule is a limited exception to the general principle that a governmental entity may not be held liable in negligence for injuries resulting from the failure to provide police protection to a particular individual, as "a municipality's duty to provide police protection is ordinarily one owed to the public at large and not to any particular individual" (*Cuffy v City of New York, supra*, at 260; *see, Bonner v City of New York*, 73 NY2d 930, 933-934 [Simons, J., dissenting]; *Boland v State of New York*, 218 AD2d 235, 240; *Pike v State of New York*, 214 AD2d 934, 935, *lv denied and dismissed* 86 NY2d 811; *Pascarella v City of New York, supra*, at 67-68). The general rule reflects the judicial recognition that a governmental

entity's allocation of limited public resources to provide security to the public remains a matter of legislative and executive decision making, as it requires the exercise of discretion in making the necessary policy tradeoffs between various security measures (*see, Weiner v Metropolitan Transp. Auth.*, 55 NY2d 175, 181-182; *Riss v City of New York*, 22 NY2d 579; *see also, Bonner v City of New York, supra*, at 934, 937; *Miller v State of New York, supra*, at 514 [Kaye, J., concurring]; *Glick v City of New York*, 53 AD2d 528, *affd* 42 NY2d 831).

Notably, claimant did not plead that the State had a special duty to him or urge recovery on that basis but, rather, contended that his claim was premised upon the State's violation of its duty of care in its proprietary capacity as SUNYA's landowner. Of course, having waived its sovereign immunity, when the State acts in this proprietary capacity it is subject to "the same principles of tort law as is a private landlord" and it may be found liable for negligence even in the absence of a special duty (*Miller v State of New York, supra*, at 511; *see, Preston v State of New York*, 59 NY2d 997; *see also*, Court of Claims Act § 8; *Bonner v City of New York, supra*, at 934). Where, as here, the State acted in a dual capacity—i.e., in a proprietary capacity as landowner by its ownership and control of SUNYA, and in its governmental capacity by providing police protection through campus security—the courts are directed to scrutinize the claimant's allegations to ascertain where the State's conduct properly fits along the "continuum of responsibility" between these proprietary and governmental functions (*Miller v State of New York, supra*, at 511; *see, Weiner v Metropolitan Transp. Auth., supra*, at 182; *Laura O. v State of New York*, 202 AD2d 559, 560).

The progression begins with the public entity's duty to provide simple maintenance of its property such as "repair of steps or the maintenance of doors" and gradually extends "out to more complex measures of safety and security for a greater area and populace, whereupon the actions increasingly, and at a certain point only, involve governmental functions, for example, the maintenance of general police * * * protection" (*Miller v State of New York, supra,* at 512). Thus, the State's liability turns on "the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred" (*Weiner v Metropolitan Transp. Auth., supra*, at 182; *see, Marilyn S. v City of New York*, 134 AD2d 583, 584, *affd* 73 NY2d 910).

A close review of claimant's allegations in his claim and his verified bills of particulars confirms that the allegedly negligent

actions and conduct by the State of which he complains are patently different in their nature from, and are beyond the scope of, the State's duty as a landowner to maintain its premises, and clearly implicate the State's exercise of its governmental function of providing safety and security to the SUNYA campus. Claimant alleges that the State was negligent in failing to supervise the assailant or to prevent his possession of a weapon, his entry onto SUNYA property, and his attack on claimant; in failing to assure the safety of SUNYA students and to provide adequate security; and in failing to properly investigate or follow-up on prior incidents involving the assailant reflecting his propensities or to warn students thereof. He also claims that the State was negligent in failing to install "panic" buttons or "blue light" phones in the lecture centers to facilitate immediate access to SUNYA's public safety department, and in removing phones from the lecture halls. In our view, these contentions all challenge the adequacy of SUNYA's overall security system and its particular security provisions and practices.

In case after case, the courts of this State have recognized that " 'the provision of security [including campus security] against physical attacks by third parties * * * is a governmental function involving policymaking regarding the nature of the risks presented, and * * * no liability arises from the performance of such a function absent a special duty of protection' " (*Ruchalski v Schenectady County Community Coll.*, 239 AD2d 687, 688, quoting *Bonner v City of New York*, 73 NY2d 930, 932, *supra*; *see, Vitale v City of New York*, 60 NY2d 861; *Weiner v Metropolitan Transp. Auth.*, *supra*, at 175, 182; *Rashed v State of New York*, 232 AD2d 394; *Adams v State of New York*, 210 AD2d 273; *Laura O. v State of New York*, 202 AD2d 559, 560-561, *supra*; *Marilyn S. v City of New York*, 134 AD2d 583, 584-585, *supra*; *Pugliese v City of New York*, 115 AD2d 465, *lv denied* 67 NY2d 608). Likewise, the State's failure to establish, operate and maintain a certain type of phone system in the lecture halls or emergency communication network such as "blue light" phones constitutes allegations of negligent provision of security against criminal acts on campus, a government function (*see, Melanson v State of New York*, 215 AD2d 43, *lv denied* 87 NY2d 810; *Bogart v Town of New Paltz*, 145 AD2d 110, *lv denied* 74 NY2d 608).

Moreover, the State's alleged failure to adopt any particular security measure or to maintain or retain particular aspects of its existing, overall security system such as phones is not equivalent to a failure by the State in its proprietary capacity to

maintain minimum security measures such as exterior locks on residential buildings (*see, e.g., Bonner v City of New York, supra; Marilyn S. v City of New York, supra; cf., Miller v State of New York, supra,* at 513-514). Indeed, the State's determination as to how to best adopt and implement an overall security system and plan and whether to enroll or retain a troubled student are governmental functions (*see, Glick v City of New York,* 53 AD2d 528, *supra; see also, Bonner v City of New York, supra,* at 936; *Marilyn S. v City of New York, supra*).

In that regard, the absence of police surveillance or administrative supervision of the assailant or the lecture hall and the State's failure to warn of potential criminal activity are governmental functions because they "grow directly out of the failure to allocate police resources" (*Weiner v Metropolitan Transp. Auth., supra,* at 182). Furthermore, any failure by the State to adopt certain security or administrative rules and regulations to protect students such as claimant, or to follow SUNYA's procedures to communicate to appropriate SUNYA personnel the assailant's threatening remarks directed at a professor in July 1994, does not give rise to a duty or liability on the part of the State in the absence of a special relationship to claimant (*see, DiPace v Town of Stockport,* 190 AD2d 982, 983, *lv denied* 81 NY2d 711).

In sum, notwithstanding claimant's contentions that the State's negligence flows from its performance of its proprietary function as a landowner, the specific acts and omissions for which claimant seeks to hold the State liable arise from its alleged failure to provide adequate and effective security measures and police protection on SUNYA's campus which occurred, if at all, in the State's fulfillment of what is essentially a governmental function (*see, Weiner v Metropolitan Transp. Auth., supra,* at 182; *see also, Ruchalski v Schenectady County Community Coll., supra; Rashed v State of New York, supra; Adams v State of New York, supra; Laura O. v State of New York, supra; Marilyn S. v City of New York, supra*). As noted, plaintiff has not alleged and the record does not support a finding that a special relationship existed (or raise a question of fact that such a relationship existed) between the State and claimant. Indeed, *inter alia,* there is no evidence in the record that the State, through promises or actions, assumed an affirmative duty to act on behalf of claimant or that he justifiably relied on such an affirmative undertaking (*see, Bogart v Town of New Paltz,* 145 AD2d 110, 112, *supra; see also, Cuffy v City of New York,* 69 NY2d 255, 260, *supra; Pike v State of New York, supra; Pascarella v City of New York,* 146 AD2d 61, 67-68, *supra; cf., Wenger v Goodell,* 220 AD2d 937).

Thus, despite the admiration and compassion due to claimant, the State is immune from liability for this criminal attack and there is no legal basis for judgment in his favor (*see, Ruchalski v Schenectady County Community Coll., supra,* at 688; *Laura O. v State of New York, supra; Marilyn S. v City of New York, supra,* at 585). In circumstances as are presented here, as tragic as they clearly are, the State is not an insurer or guarantor of the safety of SUNYA students, and had no legal duty to shield SUNYA students from the criminal actions of other students or to prevent such attacks (*see, Ellis v Mildred Elley School,* 245 AD2d 994, 996; *see also, Eiseman v State of New York,* 70 NY2d 175, 190; *Pascarella v City of New York, supra*).

Peters, Carpinello and Graffeo, JJ., concur; Cardona, P. J., not taking part. Ordered that the order is affirmed, without costs.