P.R.B. v State of New York (2022 NY Slip Op 00348)





P.R.B. v State of New York


2022 NY Slip Op 00348


Decided on January 20, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 20, 2022

532933
[*1]P.R.B., Respondent,
v
State of New York et al., Appellants.

Calendar Date:November 19, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

FitzGerald Morris Baker Firth PC, Glens Falls (John D. Aspland Jr. of counsel), for appellants.
O'Connell and Aronowitz, Albany (Michael Y. Hawrylchak of counsel), for respondent.



Colangelo, J.
Appeal from an order of the Court of Claims (Hard, J.), entered January 29, 2021, which denied defendants' motion for summary judgment dismissing the complaint.
During the early morning hours of October 23, 2016, claimant, then a sophomore at the State University of New York at Albany (hereinafter SUNY Albany), was sexually assaulted in her dormitory room located within a suite on an upper floor of Stuyvesant Tower. She was assaulted by a recent parolee who had no authority to be in the dormitory.[FN1] In July 2017, claimant filed the instant claim alleging that defendants (1) created a dangerous and unsafe environment for her as a resident in an on-campus dormitory, (2) failed to install proper security devices, including a lock, (3) failed to otherwise provide appropriate security measures in Stuyvesant Tower, and (4) failed to provide an adequate amount of security to students in order to prevent individuals from gaining unauthorized access to dormitory rooms. Following joinder of issue, completion of discovery and the filing of a note of issue, defendants moved for summary judgment dismissing the claim on several grounds, including that governmental immunity bars the claim. Claimant opposed the motion. The Court of Claims denied the motion, finding that defendants' non-police negligent acts were undertaken in a proprietary and not a governmental capacity and defendants were not immune from liability. Further, the court found that claimant presented issues of fact as to whether the rape was reasonably foreseeable, whether defendants discharged their duty to provide reasonable security measures and whether defendants' negligence was the proximate cause of claimant's injuries.[FN2] Defendants appeal, and we affirm.
Defendants initially contend that the Court of Claims erred in determining that their allegedly negligent acts were undertaken in a proprietary rather than a governmental capacity and are therefore not protected by governmental immunity. We disagree. "Where, as here, a negligence claim is asserted against a governmental agency, the threshold issue to be determined by the court is whether the [governmental agency] was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" (Scozzafava v State of New York, 174 AD3d 1109, 1110 [2019] [internal quotation marks and citations omitted]; see T.T. v State of New York, 151 AD3d 1345, 1345-1346 [2017]). "[T]o determine whether a governmental agency is acting in a proprietary function or a governmental capacity requires an examination of 'the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred'" (Scozzafava v State of New York, 174 AD3d at 1110, quoting Matter of World Trade Ctr. Bombing Litig., 17 NY3d 428, 447 [2011], cert denied 568 US 817 [2012]; see Drever v State of New York, 134 AD3d 19, 22 [2015]).
As the Court of Appeals has recognized, "[a] governmental [*2]entity's conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions" and "any issue relating to the safety or security of an individual claimant must be carefully scrutinized to determine the point along the continuum that the [governmental entity's] alleged negligent action falls into, either a proprietary or governmental capacity" (Miller v State of New York, 62 NY2d 506, 511-512 [1984]). In Miller, a student at a state university was raped by an intruder in the laundry room in her dormitory. The Court of Appeals permitted the claim of negligence — stemming from the defendant's failure to lock the entrance doors to the dormitory — to go forward in the defendant's proprietary capacity as a landlord. As in Miller, claimant's allegations that defendants failed to, among other things, install proper security devices, including locks, clearly implicate defendants' proprietary function as a landlord, and the Court of Claims therefore correctly rejected defendants' claim of governmental immunity.
Defendants next argue that the sexual assault of claimant was not foreseeable, based upon, among other things, the deposition testimony of Aran Mull, SUNY Albany's assistant chief of police. "Landlords have a common-law duty to take minimal precautions to protect tenants from foreseeable harm, including foreseeable criminal conduct by a third person" (Mason v U.E.S.S. Leasing Corp., 96 NY2d 875, 878 [2001] [citations omitted]; see Haire v Bonelli, 107 AD3d 1204, 1204-1205 [2013], lv denied 22 NY3d 852 [2013]). Criminal conduct is foreseeable if it is "reasonably predictable based on the prior occurrence of the same or similar criminal activity at a location sufficiently proximate to the subject location" (Six Anonymous Plaintiffs v Gehres, 68 AD3d 1177, 1178 [2009] [internal quotation marks and citations omitted], lv denied 14 NY3d 710 [2010]; see Jaqueline S. v City of New York, 81 NY2d 288, 294-295 [1993]; Milton v I.B.P.O.E. of the World Forest City Lodge, #180, 121 AD3d 1391, 1392 [2014]).
Mull testified that he was unaware of any other instance of stranger rape on campus in his 20 years of service as a member of the SUNY Albany police. However, Mull also testified that he was provided notice of all reported crime on campus and that, in 2016, 26 rapes were reported as having occurred on campus and in residence halls. In opposition to defendants' motion, claimant submitted, among other affidavits, the expert affidavit of and chart compiled by security expert Norman D. Bates, following his review of, among other things, the deposition testimony of Mull, John Giarrusso, the Associate Vice-President for Facilities at SUNY Albany, and Carol Perrin, the Director of Residential Life at SUNY Albany, as well as SUNY Albany's crime data/incident reports and Clery reports.[FN3] The chart contained statistical data of criminal incidents reported to the SUNY Albany police during the three[*3]-year period preceding claimant's rape, showing 26 incidents of assaults, sexual assaults and unauthorized entries into dormitory rooms. Of these incidents, five involved a sexual offense and an intruder who came into the room. In one incident, which occurred in claimant's dormitory on August 29, 2014, students reported that another student entered their suite without authorization and "they felt something was wrong with the suite door lock as it was not locking properly." Bates opined, within a reasonable degree of professional certainty, that the crime data published by defendants evidences an increase in sex offenses, both on campus and in student housing, and that defendants were aware that students would be followed into the buildings, a pattern known as "tailgating," which Mull testified occurs on campus every day — day and night. Bates recounted Mull's testimony that SUNY Albany "did not want unauthorized people in the building[s] because it is a potential safety issue" and Perrin's testimony that sex crimes increased on campus from 2014 to 2016 and that students did not always lock the doors. Bates opined that, "[g]iven the history of sexual assaults, the inherent risk of sexual assaults in a campus setting and [d]efendants' acknowledgment of the risk of sexual assault/rape, the sexual assault of [claimant] was a foreseeable event."
In finding that claimant's evidence presented an issue of fact as to whether the rape was foreseeable, the Court of Claims did not determine, in the first instance, whether defendants, as the moving parties, established "a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of a material issue of fact" (Timmany v Benko, 195 AD3d 1212, 1213 [2021] [internal quotation marks omitted]; see Voss v Netherlands Ins. Co., 22 NY3d 728, 734 [2014]; WFE Ventures, Inc. v GBD Lake Placid, LLC, 197 AD3d 824, 827 [2021]). However, upon viewing the facts in the light most favorable to claimant (see Altman v Shaw, 184 AD3d 995, 999-1000 [2020]; Smero v City of Saratoga Springs, 160 AD3d 1169, 1170 [2018]), we find that defendants "[f]ail[ed] to make [such] prima facie showing . . . requir[ing] a denial of the motion, regardless of the sufficiency of [claimant's opposition]" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [internal quotation marks, emphasis and citation omitted]; see Whiteside v Stachecki, 180 AD3d 1291, 1292 [2020]). Even if defendants had met their burden, we find that claimant raised the existence of a material issue of fact as to whether her rape was foreseeable, warranting denial of defendants' motion on this basis (see Smero v City of Saratoga Springs, 160 AD3d at 1173).
Defendants next contend that even if the rape was foreseeable, they discharged their duty to provide reasonable security measures, as all of the doors at issue — the front entrance door, the suite door and the bedroom door — had functioning locks. Moreover[*4], Mull testified that one of claimant's suitemates had left the suite door unlocked to allow her boyfriend to enter the suite, and the bedroom door had been left unlocked by claimant's roommate. In opposition to the motion, claimant submitted, among other things, the affidavit of Randall C. Oxley, the president and chief executive officer of Lock Design Company, a company that "design[s], patent[s], manufacture[s], service[s] and market[s] products for the security hardware industry." Oxley opined that the lock on claimant's suite door in 2016 is a "classroom" lock that is "wholly inappropriate" for a dormitory setting, not intended for dormitory suites and "not in accordance with industry standards." The suite door cannot be locked from inside the suite, and a student inside the suite cannot discern if the suite door is locked or unlocked. In addition, Bates pointed out that claimant's suite door could be set to an unlocked position while most other suite doors on campus lock automatically so that they could not intentionally or unintentionally be left unlocked. In his opinion, automatically locking doors were particularly necessary since SUNY Albany did not staff the lobby with a person to screen visitors. Bates also cited to several security publications that opine that dormitory rooms should have self-locking doors to prevent unwanted intrusions and that most suite doors on the campus had self-locking doors.
Testimony by SUNY Albany employees further raised a question of fact as to whether the security measures taken by defendants were reasonable. According to Giarrusso, underage drinking and drug use would affect campus safety and it was foreseeable that an intoxicated or impaired student could become confused and forget to lock his or her door. Perrin testified that the lock on claimant's suite door can be set to an unlocked setting if turned in a certain direction and that students would, at times, inadvertently leave the doors unlocked, which problem would be alleviated if the door had an automatic lock. She further testified that three of nine buildings in the Dutch Quad — where Stuyvesant Tower is located — have automatic locks or swipe card access on the suite doors. The Court of Claims did not specifically determine whether defendants met their initial burden of showing it was entitled to judgment as a matter of law. Given the papers submitted in support of and in opposition to defendants' motion, and mindful that "the type of safety measures that [landlords] are reasonably required to provide is almost always a question of fact for the jury" (Wayburn v Madison Land Ltd. Partnership, 282 AD2d 301, 303 [2001]; see Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 520, 522 [1980]), defendants' motion for summary judgment was properly denied on this basis.
Lastly, defendants contend that summary judgment should have been granted as claimant was unable to establish how her rapist gained entrance to Stuyvesant Tower and therefore [*5]cannot establish proximate causation. We disagree. On a motion for summary judgment, claimant need only "present evidence from which intruder status may reasonably be inferred" (Burgos v Aqueduct Realty Corp., 92 NY2d 544, 551 [1998]). It is undisputed that the intruder was not a student at SUNY Albany or a resident of Stuyvesant Tower, and claimant did not know him. Mull testified that this intruder likely "tailgated" in, which occurs on a regular basis. Accordingly, the Court of Claims properly found that a question of fact exists as to causation, warranting denial of defendants' motion on that basis (see Gonzalez v Riverbay Corp., 150 AD3d 535, 536 [2017]).
Egan Jr., J.P., Lynch, Clark and Pritzker, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: The parolee was thereafter convicted of rape and sentenced to a term of imprisonment.

Footnote 2: The Court of Claims determined that claimant could not maintain a cause of action based upon defendants' alleged failure to provide police security in the dormitory, as such claim implicated a governmental function and no special duty existed. In their respective briefs, the parties agree with the court's determination that claimant could not maintain such cause of action.

Footnote 3: The Clery Act, codified at 20 USC § 1092, requires colleges and universities to, among other things, report campus crime data.