Brown v University of Rochester (2023 NY Slip Op 02724)

Brown v University of Rochester

2023 NY Slip Op 02724

Decided on May 18, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 18, 2023

534713
[*1]Rebekah Brown, Respondent,
v
University of Rochester et al., Appellants, et al., Defendant.

Calendar Date:March 29, 2023

Before:Egan Jr., J.P., Lynch, Aarons, Fisher and McShan, JJ.

Martin Clearwater & Bell LLP, New York City (Barbara D. Goldberg of counsel), for University of Rochester and another, appellants.
Cabaniss Casey LLP, Albany (David B. Cabaniss of counsel), for Daniel William Steinle, appellant.
Tully Rinckey PLLC, Albany (Allen A. Shoikhetbrod of counsel), for respondent.

Lynch, J.
Appeal from an order of the Supreme Court (L. Michael Mackey, J.), entered December 6, 2021 in Albany County, which denied motions by defendants Daniel William Steinle, University of Rochester and Board of Trustees of the University of Rochester to dismiss the complaint against them.
In August 2021, plaintiff commenced this action under the Child Victims Act (see L 2019, ch 11 [hereinafter the CVA])[FN1] seeking to recover damages for alleged sexual assaults she endured when she was a student at defendant University of Rochester.[FN2] As alleged in the complaint, in the weeks leading up to Thanksgiving 1984, plaintiff — then a 17-year-old freshman — was sexually assaulted on two occasions by members of defendant Delta Kappa Epsilon (hereinafter DKE), a fraternity with premises on the University's campus (see University of Rochester v Wagner, 63 AD2d 341, 341 [4th Dept 1978], affd 47 NY2d 833 [1979]). The first incident occurred in October when plaintiff attended a party at DKE's fraternity house along with two friends, one of whom was dating defendant Daniel William Steinle, a DKE member. Steinle took their coats to his room. Plaintiff became "intoxicated and disoriented" after consuming two beers, which were provided to her "not directly from the keg, but from a shelf under the table." Thereafter, "[p]laintiff went upstairs . . . to retrieve her coat, but only made it to the top of the stairs, where she held on to the railing." Her next memory is of Steinle "on top of her, raping her." Plaintiff maintains that, the next day, she told two DKE members who lived in her dormitory about what happened and they replied, "don't worry about it. It happens to all freshman girls." As for the second incident, the complaint alleges that, "[j]ust prior to Thanksgiving 1984," plaintiff was sexually assaulted by another member of DKE, identified as "Moxy," after attending a party at the DKE house. Moxy agreed to walk plaintiff back to her dorm following the party, but they ended up stopping at Moxy's room so that he could grab a sweater. According to the complaint, as plaintiff turned to leave, Moxy "stood in front of the door[,] . . . blocked [her] from exiting" and "proceeded to rape [her]." Although plaintiff avers that she informed a University counselor about the sexual assaults, the counselor failed to report her claims to University officials, campus security or the City of Rochester Police Department.
In addition to these specific incidents, the complaint alleges an ongoing pattern of sexual assaults of female students on or around the DKE fraternity house. To that end, the complaint specifically alleges that, during fraternity parties at the DKE house, members of the fraternity "would 'spike' . . . alcohol with drugs[,] which would render female students, including minors under the age of [18], incapacitated." DKE members would then "sexually assault" these students "in or around" the fraternity house. As for the University's knowledge of such conduct, the [*2]complaint alleges that the University "received credible reports" in this respect, but failed to notify authorities or conduct proper investigations.
Plaintiff asserts various causes of action against defendants, including a claim for common-law negligence against the University and a claim for sexual assault against Steinle. As for the negligence claim, the complaint asserts that the University "had a duty to [p]laintiff and similarly situated students to use the same degree of care as a reasonably prudent entity would use to provide a safe and secure environment free from foreseeable harms," and to "supervise, control, regulate, monitor, and oversee school activities, as well as . . . students . . . while on . . . campus." Emphasizing that DKE members "were able to serve alcohol to minors and commit sexual assault on . . . campus for a sufficient time [to enable] the events alleged in th[e] [c]omplaint to occur," the complaint avers that the University breached its duty of care to plaintiff by, among other things, failing to (1) supervise its students, (2) "institute and/or implement . . . proper policies and security measures" that would have prevented DKE members from providing alcohol to minors and committing sexual assaults against other students, and (3) properly investigate and notify authorities about the reports of sexual misconduct. According to the complaint, the University's omissions in this respect created an environment where "DKE members were permitted to continue the abuse."
In lieu of answering, the University moved to dismiss the complaint for failure to state a cause of action (see CPLR 3211 [a] [7]) arguing, among other things, that it could not be held liable for negligence because it "owed no duty, as a matter of law, to control the actions of any of its students, including members of the [f]raternity, under the circumstances alleged." Steinle separately moved to dismiss the cause of action asserted against him for sexual assault, contending that it was time-barred because the CVA was not intended to include claims by college students living independently and the complaint did not comply with statutory pleading requirements insofar as it failed to identify any specific provision of Penal Law article 130 that he allegedly violated.
Supreme Court partially granted the University's motion insofar as it sought dismissal of the third cause of action alleging a statutory duty to report suspected child abuse under Social Services Law §§ 413 and 420, but otherwise denied the motion as it pertained to the claim for common-law negligence, finding that the allegations in the complaint were sufficient to give rise to a legal duty on the University's part as the property owner to protect plaintiff from criminal conduct perpetrated against her by DKE members and adequately pleaded the remaining elements of a negligence claim. The court also denied Steinle's motion, rejecting his argument that the CVA did not apply under the circumstances [*3]alleged and finding that the complaint pleaded sufficient facts that, if proved, "would constitute a sexual offense under the requisite provision[s] of the New York [P]enal [L]aw." The University and Steinle appeal.
We turn first to the University's contention that it owed no duty of care to protect plaintiff from the criminal acts of other students. On a motion to dismiss under CPLR 3211 (a) (7), the court must "accept the facts as alleged in the complaint as true, accord [the nonmoving party] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). The pivotal question is whether the complaint "sets forth facts that constitute a viable cause of action," not "whether the plaintiff can ultimately establish his or her allegations and is likely to prevail" (F.F. v State of New York, 194 AD3d 80, 83 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], appeal dismissed & lv denied 37 NY3d 1040 [2021], cert denied ___ US ___, 142 S Ct 2738 [2022]).
"CPLR 214-g, enacted as part of the CVA, provides a revival window for civil claims or causes of action alleging intentional or negligent acts or omissions that seek to recover damages for injuries suffered as a result of 'conduct which would constitute a sexual offense as defined in [Penal Law article 130] committed against a child less than [18] years of age' " (Anonymous v Castagnola, 210 AD3d 940, 941 [2d Dept 2022], quoting CPLR 214-g). Plaintiff's claim against the University is premised upon negligent, rather than intentional, conduct.
The threshold issue is whether the University owed a duty of care to plaintiff under the circumstances presented. For a defendant to be found liable in negligence, a duty must exist, the breach of which is a proximate cause of the plaintiff's injury (see Palsgraf v Long Is. R.R. Co., 248 NY 339, 341-342 [1928]). "The symmetry is clear: absent a duty, there is no breach and, without a breach, there is no liability" (Vogel v West Mountain Corp., 97 AD2d 46, 48 [3d Dept 1983]). "[T]he imposition of duty presents a question of law for the courts" (Eiseman v State of New York, 70 NY2d 175, 189 [1987]).
The University argues that the Court of Appeals' Eiseman decision (70 NY2d at 190) "requires a finding" that it did not owe plaintiff a duty of care under the circumstances alleged in the complaint. The University is correct to the extent that Eiseman affirmatively rejected the doctrine of in loco parentis at the college level and affirmed the premise that "colleges today in general have no legal duty to shield their students from the dangerous activity of other students" (id.). Supreme Court recognized as much and did not find that the University had a duty based on a student-to-student contact dynamic (see Luina v Katharine Gibbs School NY, Inc., 37 AD3d 555, 556 [2d Dept 2007]; Ellis v Mildred Elley Sch., 245 AD2d 994, [*4]995 [3d Dept 1997]; Rothbard v Colgate Univ., 235 AD2d 675, 676 [3d Dept 1997]). The criminal acts in Eiseman, however, were perpetrated at an off-campus residence. Supreme Court determined that plaintiff stated a viable claim based on the University's duty as a property owner to protect students from reasonably foreseeable criminal activity on campus.
We are mindful that in premises security situations, "[l]andlords have a 'common-law duty to take minimal precautions to protect tenants from foreseeable harm,' including a third party's foreseeable criminal conduct" (Burgos v Aqueduct Realty Corp., 92 NY2d 544, 548 [1998], quoting Jacqueline S. v City of New York, 81 NY2d 288, 293-294 [1993]; see Miller v State of New York, 62 NY2d 506, 514 [1984]; P.R.B. v State of New York, 201 AD3d 1237, 1239 [3d Dept 2022]). In the premises security context, the Court of Appeals has observed that a "plaintiff can recover only if the assailant was an intruder" (Burgos v Aqueduct Realty Corp., 92 NY2d at 550-551). Here, neither Steinle nor Moxy were intruders on campus. As students, they were entitled to be present at the on-campus locations where the incidents occurred. Nor is this a situation where the University failed to take preventive security measures, such as installing adequate door-locking mechanisms. That assessment, however, does not end our inquiry.
With respect to landlords, no duty of care arises " 'to prevent one tenant from attacking another tenant unless [the landlord] has the authority, ability, and opportunity to control the actions of the assailant' " (Virella v 245 N. St. Housing Dev. Fund Corp., 188 AD3d 1618, 1619 [4th Dept 2020], quoting Britt v New York City Hous. Auth., 3 AD3d 514, 514 [2d Dept 2004], lv denied 2 NY3d 705 [2004]). The ability to initiate a summary proceeding to evict a tenant is generally not enough to give rise to such a duty (see Britt v New York City Hous. Auth., 3 AD3d at 514). The university/student relationship, however, is far more than that of landlord/tenant. A university is in a unique position to establish student conduct policies and to take affirmative disciplinary action against fraternities for ongoing illegal conduct perpetrated by their members while on campus (see e.g., Klockowski v State Univ. of N.Y. Coll. at Plattsburgh, 182 AD3d 725, 726-728 [3d Dept 2020]; Matter of Rensselaer Socy. of Engrs. v Rensselaer Polytechnic Inst., 260 AD2d 992, 993 [3d Dept 1999]; Matter of Mu Ch. of Delta Kappa Epsilon v Colgate Univ., 176 AD2d 11, 13 [3d Dept 1992]). We conclude that where, as here, a complaint alleges that a university received credible reports of ongoing and pervasive criminal conduct against students, perpetrated on campus by other students within the university's control, the university had a legal duty to take appropriate responsive action (see Druger v Syracuse Univ., 207 AD3d 1153, 1154 [4th Dept 2022]; compare Pasquaretto v Long Is. Univ., 106 AD3d 794, 795-796 [2d Dept 2013]). As such, Supreme [*5]Court did not err in denying the University's motion to dismiss the complaint.
We further conclude that Supreme Court properly denied Steinle's motion to dismiss. CPLR 214-g speaks to "every civil claim or cause of action" arising out of "a sexual offense as defined in [Penal Law article 130] committed against a child less than [18] years of age." Contrary to defendant's argument, the claim as pleaded adequately states a cause of action within the scope of the statute.
Egan Jr., J.P., Aarons, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: The CVA "provides for amendments with regard to certain statutes of limitations with respect to sex crimes committed against children less than 18 years of age," allowing such victims to revive otherwise stale claims for a defined period of time (S.H. v Diocese of Brooklyn, 205 AD3d 180, 184 [2d Dept 2022]; see CPLR 214-g).

Footnote 2: Although plaintiff separately named as a defendant the Board of Trustees of the University of Rochester, we will hereinafter include the Board in any reference to the University.