Cuomo v State of New York (2025 NY Slip Op 01991)

Cuomo v State of New York

2025 NY Slip Op 01991

Decided on April 3, 2025

Appellate Division, Third Department

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 3, 2025

CV-24-0273

[*1]Christopher R. Cuomo, as Administrator of the Estate of Joao Souza, Appellant,
v
State of New York, Respondent.

Calendar Date:February 19, 2025

Before: Egan Jr., J.P., Aarons, Pritzker, Lynch and Ceresia, JJ.

Law Office of Mark E. Goidell, Garden City (Mark E. Goidell of counsel) and Rappaport, Glass, Levine & Zullo, LLP, Islandia (Michael S. Levine of counsel), for appellant.
Lewis Johs Avallone Aviles, LLP, Islandia (John B. Saville of counsel), for respondent.

Lynch, J.
Appeal from an order of the Court of Claims (Catherine Schaewe, J.), entered January 3, 2024, which, among other things, granted defendant's cross-motion for partial summary judgment dismissing the complaint.
In November 2018, Michael Roque pleaded guilty to murder in the second degree in connection with the fatal stabbing of decedent Joao Souza (hereinafter decedent) in his dormitory on the campus of Binghamton University approximately seven months prior (see People v Roque, 234 AD3d 1050 [3d Dept 2025]). Roque and decedent were both students at the University at the time of the attack and had been friends until decedent began dating Roque's ex-girlfriend. Roque, who was not a resident of the dormitory where the attack occurred and did not have a swipe card to enter, accessed the residence after two students exited.
In October 2019, claimant, the administrator of decedent's estate, filed a negligence claim against defendant to recover for wrongful death and conscious pain and suffering based upon two theories of liability: (1) the University "breached its duty as a landlord to provide security," and (2) the University "breached a duty to protect [decedent] from Roque, who had expressed to [University] personnel an all-consuming hostility" against decedent prior to the attack. This appeal centers on the viability of claimant's second theory of liability, i.e., whether the University owed a duty to protect decedent under the circumstances presented. To resolve this question, we need not detail the convoluted procedural history leading up to the order on appeal. It suffices to say that the question arose in the context of a discovery dispute between the parties.
Following joinder of issue, defendant produced records from the University's Counseling Center detailing statements Roque had made to a counselor about decedent in the months prior to the attack. April Thompson, the University's Dean of Students, confirmed during her deposition that the University had a written Threat Assessment Policy in place to "identify and mitigate potential student issues that might pose a threat to the institution." Although the specifics of the policy are not entirely clear, Thompson indicated that it governed the threat assessment procedures her office would undertake upon receiving a referral from the University Counseling Center or another department. Thompson was unsure whether any written guidelines existed governing the circumstances under which the University Counseling Center would make a threat assessment referral to her office, explaining that such guidelines, if any, would have been maintained by the counseling center itself. Thompson also confirmed that there were limited, mandated exceptions to the University Counseling Center's confidentiality practices requiring counselors to alert authorities when a student was assessed to pose a serious threat of harm to self or others. When questioned about certain statements Roque made during therapy sessions [*2]with a counselor at the University's Counseling Center in the months prior to the attack — which were contained in the psychological records produced by defendant during the initial discovery period — Thompson conceded that some of the statements "possibly" constituted a threat against decedent sufficient to have warranted a threat assessment referral by the counseling center. However, she cautioned that she did not know the counseling center's specific guidelines in that regard and that referrals were made on a case-by-case basis upon a counselor's assessment of the particular circumstances.
Following Thompson's deposition, claimant served defendant with a demand for additional discovery seeking, among other things, documents related to the University's Threat Assessment Policy, written guidelines that were disseminated to the University's threat assessment team, and training materials given to University officials who worked security in the dormitories during the 2017-2018 academic year. When defendant objected to the demand, claimant filed a motion to compel the production of the materials and to produce two counselors with the University's Counseling Center for depositions (see CPLR 3124). Defendant, in turn, cross-moved for partial summary judgment dismissing the claim to the extent predicated on a "duty to protect" decedent from Roque and sought a protective order precluding further discovery related to that theory.
The Court of Claims denied claimant's motion to compel and granted defendant's cross-motion for partial summary judgment. Relying on Eiseman v State of New York (70 NY2d 175 [1987]), the court concluded, as a matter of law, that the University "did not owe [d]ecedent any duty of protection from the dangerous conduct of Roque nor was it obligated to restrict Roque in some manner based upon either's status as a . . . student." As such, the court concomitantly granted defendant's motion for a protective order precluding further discovery pertaining to the "duty to protect" theory of liability and denied claimant's motion to compel as "moot." Claimant appeals.
We reverse. Turning first to defendant's cross-motion, summary judgment is a "drastic remedy, to be granted only where the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [internal quotation marks, brackets and citation omitted]). Although summary judgment is appropriate when there is no cognizable legal theory providing a basis for recovery, the Court of Claims erred in concluding as much here.
To hold defendant liable for negligence, claimant must establish that the University owed decedent a duty, breached that duty, and that the breach was a proximate cause of decedent's death (see Palsgraf v Long Is. R.R. Co., 248 NY 339, 341-342 [1928]; Brown v University of Rochester, 216 AD3d 1328, 1331 [3d Dept 2023]). The threshold issue in any negligence action is whether [*3]the defendant owed the plaintiff a legally recognized duty of care (see Weisbrod-Moore v Cayuga County, ___ NY3d ___, ___, 2025 NY Slip Op 00903, *2 [Feb. 18, 2025]). The existence and scope of a duty are legal questions for the courts to resolve in the first instance (see id. at ___, 2025 NY Slip Op 00903, *2; Eiseman v State of New York, 70 NY2d at 189).
As it pertains to the duty of care owed by a university to its students, the Court of Appeals in Eiseman v State rejected the doctrine of in loco parentis at the college level and held that "colleges today in general have no legal duty to shield their students from the dangerous activity of other students" (70 NY2d at 190). Claimant, however, is not seeking to hold the University liable for failing to protect decedent simply by virtue of his status as a student on campus — a theory which would be incompatible with Eiseman. The crux of claimant's argument, as we understand it, is that counselors employed by the University's Counseling Center were negligent in failing to make a threat assessment referral to the Dean of Students' office upon learning of Roque's hostility toward decedent in the months before the attack and in failing to warn decedent of Roque's threats against him. Since the specific acts of negligence occurred during the University's provision of mental health services — a proprietary function (see Schrempf v State of New York, 66 NY2d 289, 294 [1985]; D'Avolio v Prado, 277 AD2d 877, 879 [4th Dept 2000]; Rattray v State of New York, 223 AD2d 356, 357 [1st Dept 1996]; Webb v Muller, 70 Misc 3d 324, 335 [Sup Ct, Albany County 2020]) — we conclude that no special duty need be established to hold the University liable and it is "held to the same duty of care as private individuals and institutions engaging in the same activity" (Schrempf v State of New York, 66 NY2d at 294).
It bears emphasis that Eiseman involved a student's attack of another student off-campus, with the claim premised on the university's negligence in admitting a student who was an ex-felon admitted under a state-sponsored special program (see Eiseman v State of New York, 70 NY2d at 191). By comparison, in Brown v University of Rochester, this Court held "that where, as here, a complaint alleges that a university received credible reports of ongoing and pervasive criminal conduct against students, perpetrated on campus by other students within the university's control, the university had a legal duty to take appropriate responsive action" (216 AD3d at 1332 [emphasis omitted]). In so holding, we recognized that "[t]he university/student relationship . . . is far more than that of a landlord/tenant" and that "[a] university is in a unique position to establish student conduct policies and to take affirmative disciplinary action" (id.). By analogy here, University counselors had actual knowledge of hostile threats voiced by Roque against decedent. This situation is akin to that in Brown insofar as the University was aware [*4]of potential harm to a student on campus. All the more so here when a specific student was targeted.
We are unpersuaded by defendant's contention that our decision in McEnaney v State of New York (267 AD2d 748 [3d Dept 1999]) compels a contrary conclusion. The McEnaney case involved a negligence claim brought by a student at a State University who was injured while trying to disarm another student who had entered a lecture hall on campus with a gun. Finding that McEnaney's claims "all challenge[d] the adequacy of [the University's] overall security system and its particular security provisions and practices" (id. at 751), this Court concluded that the theories of negligence derived from the performance of governmental functions andthat "any failure by [the University] . . . to follow [its] procedures to communicate to appropriate [University] personnel the assailant's threatening remarks directed at a professor in July 1994, does not give rise to a duty or liability on the part of the State in the absence of a special relationship to [the] claimant" (id. at 752).
McEnaney is distinguishable in two significant ways. First, this case seeks to hold the University liable for failing to act in the face of alleged prior, known and targeted threats of harm against a specific student. McEnaney, by contrast, involved a claimant seeking to impose a duty on the University to protect the general student population at large — a situation at odds with Court of Appeals precedent declining to "recognize a duty to an indeterminate, faceless, and ultimately prohibitively large class of plaintiffs, as opposed to a known and identifiable group" (Davis v South Nassau Communities Hosp., 26 NY3d 563, 573 [2015] [internal quotation marks and citation omitted]). Second, nothing in McEnaney indicates that the prior threatening remarks made by the student-assailant occurred during the provision of mental health services, which, as noted, is an established proprietary function.
As this Court has recognized, mental health care providers may, in limited circumstances, have a duty to third parties to take reasonable steps to prevent their patients from harming members of the public when the provider knows that the patient poses a credible threat of violence (see Doe v Langer, 206 AD3d 1325, 1329 [3d Dept 2022]). Imposing such a duty is particularly appropriate where the provider's
" 'relationship with . . . the tortfeasor . . . place[d] [him or her] in the best position to protect against the risk of harm' " (Davis v South Nassau Communities Hosp., 26 NY3d at 576, quoting Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 233 [2001]). Given that the University had threat assessment and referral procedures in place governing actions to take when faced with a distressed student, we conclude that the University owed decedent a duty to reasonably comply with those policies, if applicable (see Webb v Muller, 70 Misc 3d at 336; see generally Ernest v Red Creek Cent. School Dist., 93 [*5]NY2d 664, 672 [1999]; Heard v City of New York, 82 NY2d 66, 71-72 [1991]; Regents of Univ. of Cal. v Superior Ct., 4 Cal 5th 607, 628-629 [2018]; compare Fitzsimons v Brennan, 169 AD3d 873, 875 [2d Dept 2019]; McEnaney v State, 267 AD2d at 752). Several outstanding factual questions remain about the scope and nature of those policies, whether they were triggered under the circumstances presented and, if so, whether the University breached their provisions in a manner that constituted a proximate cause of the attack on decedent. Since the requested materials and depositions are relevant and necessary to resolve these factual questions, the Court of Claims abused its discretion in denying claimant's motion to compel their production (see CPLR 408; 3101; Matter of Saratoga Prop. Devs., LLC v Assessor of City of Saratoga Springs, 62 AD3d 1107, 1109 [3d Dept 2009]).[FN1] Accordingly, defendant's cross-motion for partial summary judgment should have been denied and claimant's motion to compel discovery granted.
Egan Jr., J.P., Aarons, Pritzker and Ceresia, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, defendant's cross-motion denied, and claimant's motion to compel granted.

Footnotes

Footnote 1: We note that the Court of Claims denied claimant's motion to compel in its entirety on the basis that it was rendered moot by its determination that the University did not owe decedent a duty of protection from Roque. However, this does not account for the fact that the motion to compel also sought training materials given to University officials who worked security in the dormitories during the 2017-2018 academic school year. Those materials are relevant to the negligence claim asserted against the University in its proprietary capacity as a landlord, which is still pending before the Court of Claims and should also be disclosed.