OPINION OF THE COURT
Donald J. Corbett, Jr., J.
A motion by defendant for an order dismissing the claim is granted and a cross motion by claimants for permission to file a late claim is denied.
This claim accrued on or about July 14, 1995, when the decedent Richard Liddell died at the Attica Correctional Facility. The claim herein asserts, inter alla, the defendant’s negligence in failing to provide proper and adequate medical care,[1] and for the failure to have returned decedent’s heart with the rest of decedent’s remains.
A notice of claim ([sic], notice of intention to file a claim) was personally served upon the defendant on October 10, 1995, and in August 1996 a claim - was served, by certified mail, return receipt requested (Court of Claims Act § 11 [a]), and filed with the Clerk of the Court. Both documents named Ernestine Lid-dell and Sonora (or Señora) Bailey, the mother and sibling of the decedent, respectively, as claimants. An answer was filed on August 19, 1996, which included, inter alla, as the third affirmative defense, the lack of standing or capacity to maintain a wrongful death action as neither claimant alleged that she is an executrix or administratrix of the decedent’s estate.
In its motion, the defendant seeks dismissal because of the failure of the claimants to aver that either was appointed as a representative of the .estate of the decedent. Dismissal is also sought because the claim purportedly sounds in medical malpractice, rather than medical negligence. Similarly, with respect to allegations relating to the absence of decedent’s heart *135 when the body was returned, defendant alleges that the allegations are time barred, do not state a cognizable cause of action and are factually insufficient, since the State purportedly had no responsibility for the absence of the heart.
In response, the claimant seeks permission to file a late claim pursuant to Court of Claims Act § 10 (6), invoking the ameliorative principles of CPLR 205 (a).
I will first address the allegations relating to the absence of decedent’s heart when the body was returned. An autopsy herein was conducted on or about July 14, 1995 by the Wyoming County Coroner’s Office, and then, at the request of decedent’s family, the body was transported to the New York City Medical Examiner for a second autopsy, whereupon the startling discovery was made that decedent’s heart was missing and could not be examined. These circumstances seemed significant from a medical perspective because the Wyoming County autopsy contained details about decedent’s heart and noted the immediate cause of death was acute congestive heart failure caused by coronary artery disease, with diabetes mel-litus and chronic emphysema as contributing factors. Needless to say the claimants were already upset by the death of the decedent, and the missing heart exacerbated their concern and distress.
However, that portion of the claim, as well as that of the proposed late claim, erroneously seeks to cast the State of New York responsible for this unfortunate occurrence. The defendant alleges without any dispute or refutation that a Coroner is obligated “to take charge of’ any dead person’s body within his or her county and that the State must, and here it did, turn over the body of a deceased inmate to the Coroner to perform an autopsy (County Law § 674 [1], [5]). It is also undisputed that a Coroner is an elected county official (County Law § 400 [1]), and it is not asserted anywhere that a Coroner is a State officer. After the Wyoming County Coroner took possession of the decedent’s body and performed an autopsy, the body was released to the Brunner Funeral Home of Buffalo, New York, who then apparently made arrangements for the body which was eventually delivered to the New York City Medical Examiner for the second autopsy. Thus, it is clear and undisputed that upon decedent’s demise, the defendant, to wit, officials at Attica Correctional Facility, released the body to the Wyoming County Coroner, and did not again take possession of the body. Since it remains undisputed that the Wyoming County Coroner is a county officer, and is not a State officer, *136 and since there is nothing in any of the papers before me to indicate any conduct whatsoever by the defendant after the release of the body for the autopsy where the decedent’s heart was examined, no culpable conduct by the State of New York is alleged, beyond the conclusory allegation by the claimants. Accordingly, that part of the claim is dismissed for the failure to state a cause of action against the defendant. Similarly, to the extent that the cross motion seeks a late claim based upon these underlying allegations, it is denied, as are the purportedly related causes of action sounding in the infliction of emotional distress.
With respect to the only remaining allegations relating to the medical care received by the decedent while he was incarcerated, the claim also must be dismissed. The defendant notes that neither of the claimants aver in the notice of intention or the claim, that they had been appointed as representatives of the decedent’s estate; thus purportedly neither has the authority or capacity to maintain a wrongful death, or any, action on behalf of the decedent or his estate. The defendant relies upon Lichtenstein v State of New York (252 AD2d 921, affd 93 NY2d 911) for the proposition that Court of Claims Act § 10 (2) and (3) contemplate that an executor or administrator be formally appointed before commencing an action against the State of New York. While temporary letters of administration were issued to Ernestine Liddell on March 25, 1997, by the Surrogate of Bronx County, and on January 25, 1999, said letters were extended by the Surrogate, the claim herein was filed on August 15, 1996, and there is no factual dispute that no one was appointed as executor or administrator before the claim was filed.
The factual background in Lichtenstein v State of New York (supra) is instructive. In that matter the decedent died intestate and three months after his death his widow filed a “claim” for decedent’s personal injuries and wrongful death, as well as her own derivative losses despite the fact that no letters of administration had yet been issued or even applied for. Unlike the claim at bar, she denominated herself as the “Proposed Administratrix.” However, the defendant there asserted the lack of capacity to commence the claim as an affirmative defense, much like the third affirmative defense herein. Letters of administration were issued some nine months after the death and six months after the claim was filed.
Defendant sought dismissal therein on the ground that the action was commenced prior to the issuance of letters of *137 administration; thus the widow lacked legal capacity to sue the State and asserting that the claim was a nullity. Claimant there sought similar relief pursuant to CPLR 205 (a) and Court of Claims Act § 10 (6). The trial court (Hanifin, J.) found that the widow was not entitled to CPLR 205 (a) relief or permission to file a late claim. The Appellate Division, Third Department, concurred, and found essentially that since no claim was ever filed within 90 days of the appointment of the administrator (Court of Claims Act § 10 [2]), and since these conditions must be strictly construed (citing Dreger v New York State Thruway Auth., 81 NY2d 721), it was not error to deny the relief afforded under CPLR 205 (a). The Appellate Division then upheld the denial of the late claim application upon the balancing of the six factors of section 10 (6).
The Court of Appeals observed that the Appellate Division’s affirmance of the denial of the late claim application was not before it, but affirmed the rejection of the application of CPLR 205 (a), noting that the claimant in Lichtenstein (supra) started her action in the Court of Claims before receiving letters of administration, and thus did not meet the requirements of the Court of Claims Act, and “thus did not properly commence the action * * * [and] conclude[d] that claimant’s arguments with respect to the application of CPLR 205 (a) * * * are without merit.” (Supra, 93 NY2d 911, 913 [emphasis added].) Claimant makes a valiant effort to distance this claim from the parallels of Lichtenstein (supra), but on this point, the claims are indistinguishable. Accordingly, based upon that alone, the motion must be granted and the claim must be dismissed (Lichtenstein v State of New York, supra). To the extent that Tramantano v State of New York (131 Misc 2d 238, 241) can be read to the contrary, it would appear that it has been supplanted by the reasoning in Lichtenstein (supra). And while I might agree with Judge Silverman’s sentiments in Tramantano (supra), and Judge Kaye’s dissent in Dreger v New York State Thruway Auth. (81 NY2d 721, 724, supra), they are not consistent with my interpretation of the current state of the law.
This leads to the claimant’s[2] application for permission to file a late claim, seeking to invoke the recommencement aspects of CPLR 205 (a). This is crucial because without invoking CPLR 205 (a), this application and the underlying causes of action *138 would have to be denied as being beyond the CPLR article 2 limitations. Once again, Lichtenstein v State of New York (supra) provides the enlightenment of appellate thinking on the subject. I am well aware of the Court of Appeals opinion in Dreger v New York State Thruway Auth. (81 NY2d 721, 723, supra) where it noted that pursuant to “Court of Claims Act § 10 (6) and CPLR 205 (a), however, a party whose ‘timely commenced’ action has been dismissed and is now time-barred may apply to the court for permission to recommence the action”. But reading Dreger together with Lichtenstein leads to the obvious conclusion that claimant here may not utilize CPLR 205 (a). Thus, as a preliminary and necessary inquiry before addressing the statutory factors of section 10 (6), I must determine whether the instant motion was brought prior to the expiration of time pursuant to CPLR article 2 for the underlying and remaining causes of action.
The cross motion herein seeking permission to file a late claim was served by mail upon the defendant on January 14, 1999. The first, second and third causes of action for wrongful death and pain and suffering sound either in medical malpractice with a 2½-year Statute of Limitations (CPLR 214-a), or medical negligence with a three-year Statute of Limitations (CPLR 214 [5]). Utilizing the date of death of July 14, 1995 as the starting point, it may easily be observed that the late claim application was not brought until some 3½ years after the causes of action allegedly accrued. Accordingly, the motion for permission to file a late claim is untimely, as all three putative causes of action would be barred under the provisions of CPLR article 2. This is a matter in which I have no discretion.
The fourth cause of action raises allegations related to the Wyoming County Coroner, which I have discussed and rejected above as unrelated to the defendant herein. Nonetheless, I will briefly address the timeliness aspects of this cause of action. It does insinuate intentional conduct by the defendant and collusion, albeit without any support whatsoever, to prevent the New York City Medical Examiner from examining the decedent’s heart. As to most intentional torts, CPLR 215 provides a one-year Statute of Limitations, for which this motion is far too late, and in any event, actions for the intentional infliction of emotional distress are not permitted against the defendant (Wheeler v State of New York, 104 AD2d 496; De Lesline v State of New York, 91 AD2d 785).
*139 Accordingly, the cross motion and amended cross motion for permission to file a late claim must be denied in their entire-ties.

. For purposes of these motions and the ultimate result herein, it is not necessary to examine the distinctions between medical negligence and medical malpractice.

. In the late claim application there is only one proposed claimant, Ernestine Liddell, individually and as administratrix, rather than the two claimants who filed the original claim herein.