Estate of Fabiano v State of New York (2025 NY Slip Op 50901(U))

[*1]

Estate of Fabiano v State of New York

2025 NY Slip Op 50901(U)

Decided on April 16, 2025

Court Of Claims

Mejias-Glover, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 16, 2025
Court of Claims

The Estate of James Fabiano, deceased, by his Administrator, 
 LINDA FABIANO-KORTH, Claimant,

against
The State of New York, Defendant.

Claim No. 142165

For Claimant:
NAPOLI SHKOLNIK, LLC
By: Joseph L. Ciaccio, Esq.
For Defendant:
MARTIN CLEARWATER & BELL, LLP
By: Gregory A. Cascino, Esq.,
Gregory J. Radomisli, Esq.

Linda K. Mejias-Glover, J.

Defendant, the State of New York (hereinafter, the "Defendant"), moves by Notice of Pre-Answer Motion to Dismiss, dated and filed with the Court on November 15, 2024, seeking an order: 1) pursuant to CPLR 3211 (a) (7) and New York Public Health Law §§ 3080-3082, dismissing the claim in its entirety, with prejudice, as Defendant is immune from the liability in this claim; 2) pursuant to Court of Claims Act § 10, dismissing the action as untimely as it was filed beyond the statute of limitations; and 3) pursuant to Court of Claims Act § 11, dismissing the action as the claim was not properly verified. The motion has been fully briefed.
 Procedural Background
On November 3, 2022, Claim No. 138375 bearing caption "In the Matter of the Claim of The Estate of JAMES FABIANO, deceased, by LINDA FABIANO-KORTH, as the Proposed Administrator, and LINDA FABIANO-KORTH, Individually, v The State of New York" was filed with the Clerk of the Court of Claims alleging personal injuries and wrongful death, stemming from the death of James Fabiano, (the "Decedent") on April 20, 2020, at the Long Island State Veterans Home ("LISVH") from COVID-19 complications. Defendant appeared by filing a pre-answer motion to dismiss, which was granted by this Court pursuant to Decision and [*2]Order dated November 30, 2023 (Mejias-Glover, J.) holding that this Court lacked subject matter jurisdiction to hear the claim and that claimant therein lacked standing to file suit.
Claimant herein then commenced this action by filing this claim with the Clerk of the Court of Claims on May 21, 2024, alleging violations of Public Health Law §§ 2801-d and 2803-c, 42 C.F.R. § 483.25 and 10 NYCRR § 415, and seeking monetary damages for personal injuries, conscious pain and suffering, medical expenses, wrongful death, and punitive damages, stemming from the Decedent's death on April 20, 2020 from COVID-19 complications at LISVH and further alleging that Linda Fabiano-Korth was appointed as Administrator of the Decedent's estate by the Suffolk County Surrogate's Court on November 27, 2023 (the "Claim"). The Claim was duly served upon the Defendant on May 22, 2024. On October 8, 2024, the parties filed a stipulation extending Defendant's time to answer or otherwise respond to the Claim until November 15, 2024. In the stipulation, Defendant waived affirmative defenses related to the method of service of the Claim. Defendant then filed this motion to dismiss in lieu of filing an answer.

Factual Background
From December 2017 until April 20, 2020, Mr. Fabiano was a resident of LISVH, a State-run nursing facility. When admitted to LISVH, Mr. Fabiano was suffering from dementia and hypothyroid, which affected his insight and judgment. He also had a prior history of falling.
Mr. Fabiano tested positive for COVID-19 on April 18, 2020. On April 20, 2020, Decedent deteriorated quickly, was found unresponsive and non-reactive, and was pronounced dead.

Points of Counsel
Defendant argues that the Claim must be dismissed because Public Health Law §§ 3080-3082, the Emergency Disaster Treatment Protection Act ("EDTPA"), confers upon the State immunity from liability. In support of its motion, Defendant has submitted the affidavit of Fred Sganga, LNHA, MPH, FACHE, the Executive Director of the LISVH, wherein he states that Mr. Fabiano's care was directly impacted by the decisions and actions taken by LISVH in preparation for and during the COVID-19 pandemic. Mr. Sganga describes the measures taken to limit infection at LISVH in general, and provides a detailed description of Mr. Fabiano's care, and states that the facility and healthcare providers provided services to Mr. Fabiano in good faith.
Defendant argues that because the EDTPA confers immunity from liability upon the State, dismissal of any claim involving care impacted by acts or decisions by healthcare providers and facilities in response to the COVID-19 pandemic is required, absent narrow exceptions that are not present here. Counsel cites to this Court's prior Decisions and Orders in Papandreou v State of New York, Claim No. 139518 dated September 27, 2024 (Mejias-Glover, J.) and D'Aoust v State of New York, Claim No. 137695 dated May 16, 2024 (Mejias-Glover, J.), wherein the Court held that because the claimants in those cases were residents of the LISVH, and were alleged to have contacted and died from complications of COVID-19 during the height of the pandemic, the impact on the care provided was obvious and the EDTPA immunity therefore applied. The Court further held that LISVH acted in good faith in providing health care to the decedents and dismissed those claims accordingly.
Defendant further argues that Claimant has included a cause of action for gross [*3]negligence in an attempt to meet the narrow EDTPA exception. Counsel contends that Mr. Sganga's affidavit clearly demonstrates that the LISVH arranged for and provided health care services for the Decedent in good faith, in accordance with evolving Center for Disease Control ("CDC") and the Department of Health ("DOH") COVID-19 guidance. In his affidavit, Mr. Sganga describes the facility-wide impact of COVID-19 at the LISVH, including the measures taken to limit infection between March 3, 2020 and April 20, 2020. He further explained how every aspect of Mr. Fabiano's care was impacted by the LISVH's response to the COVID-19 outbreak and in support of New York State and federal directives to combat it. Mr. Sganga further describes the difficulties faced by the facility during the initial surge due to the lack of information known about COVID-19, as well as shortages of Personal Protection Equipment ("PPE"), tests and staff. According to Mr. Sganga, due to the high demand for and scarcity of tests, diagnoses were often presumed based on symptoms. However, patients with mild or no symptoms could still transmit the disease. At the time, asymptomatic individuals were not tested based solely on potential exposure, as limited knowledge during the initial surge hindered effective contact tracing. According to the Defendant, these factors made it particularly challenging to isolate COVID-19-positive residents, especially in the early stages of the pandemic.
According to Defendant, all social outings from LISVH were discontinued on March 10, 2020, and LISVH began screening all new admissions for signs and symptoms of COVID-
19 or potential exposure on March 11, 2020. The first COVID-19 positive test at LISVH was on March 24, 2020. The entire unit was then placed on contact and droplet precautions, and all residents were monitored for signs and symptoms each shift. On April 2, 2020, a designated unit for COVID-19 patients was established. Defendant admits that given the incubation period and asymptomatic/mild cases, it was still possible for COVID-19 to spread, despite best efforts to isolate all infected individuals.
It is Defendant's contention that all aspects of Mr. Fabiano's treatment were impacted by LISVH's response to the pandemic once COVID-19 was suspected. Specifically, Mr. Fabiano, a 94-year-old man, was given Hydroxychloroquine, Tylenol, and supplemental oxygination. Although the effectiveness of these treatments were unknown, Counsel states that such was the standard of care at that time, since there was no FDA-approved treatment for COVID-19.
Defendant's counsel further argues that Mr. Sganga's affidavit clearly demonstrates that LISVH arranged and provided health care services for Mr. Fabiano in good faith and in accordance with evolving CDC and DOH COVID-19 guidance. As a result, Defendant asserts that it is immune from suit under the EDTPA, necessitating the dismissal of the Claim. Additionally, Defendant's counsel contends that the Claimant cannot establish an exception to the EDTPA. Lastly, counsel argues that the Claim was not properly verified, as the Claimant resides in the same county as counsel and was capable of verifying the Claim.
In opposition to the motion, Claimant argues that the State has failed to "conclusively establish entitlement to immunity". A health care provider invoking such defense must first satisfy the following three prongs:
(a) the health care facility or health care professional is arranging for or providing health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law;
(b) the act or omission occurs in the course of arranging for or providing health care [*4]services and the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and
(c) the health care facility or health care professional is arranging for or providing health care services in good faith.
It is Claimant's counsel's contention that even if the State satisfies these three prongs, "immunity shall not apply if the harm or damages were caused by an act or omission constituting gross negligence by the health care facility or health care professional providing health care services." Counsel argues that the State did not protect Mr. Fabiano from the COVID-19 virus by failing to have "proper infectious disease policies and procedures, proper available PPE, and by failing to implement, after the pandemic began, additional facility-wide infection control and prevention protocols so that its nursing home facility had the capacity to provide care in compliance with its own written policies and procedures." Counsel further points out that Defendant submitted an uncorroborated affidavit from its Executive Director, Fred Sganga and further contends that Mr. Sganga's affidavit "makes conclusory assertions without reference to any corroborating document."
Claimant's counsel, quoting Johnson v Asberry, 190 AD3d 491, 492 [1st Dept 2021], further argues that "[w]hether [Defendant] and LISVH acted in good faith during the COVID-19 pandemic, whether they complied with all applicable federal and state public health guidelines, or whether they complied with any of their own protocols and guidelines 'presents a factual question which cannot be resolved on a CPLR 3211 (a) motion to dismiss.' "
Claimant's counsel, quoting Holder v Jacob, 231 AD3d 78, 87-88 [1st Dept 2024], wherein the First Department thoroughly analyzed the evidentiary showing a defendant must make to establish entitlement to dismissal of a claim premised on a complete affirmative defense of EDTPA immunity, argues that
"evidentiary material such as affidavits [are] submitted in support of the motion, [and] the focus is no longer merely on the adequacy of the [claim's] allegations", but that "such evidence must conclusivelyestablish a defense to [claimant's] claims as a matter of law", adding that "the evidence of the defense must be conclusive" and "the proof submitted in support . . . must conclusively establishthe impact on the treatment rendered to [claimant]", because "suggestion is not conclusiveness." . . . The burden of proof is triggered by virtue of the complete defense invoked by the defendant, i.e, immunity, and not by the nature of the [claim's] pleadings" [emphasis in original].
As distinguishable from other appellate court decisions in Whitehead [FN1]
, Ruth [FN2]
, Mera [FN3]
, [*5]Martinez [FN4]
, and Damon [FN5]
, wherein nursing home defendants invoked the EDTPA immunity defense, Holder focused on the defendant's burden of proof, not solely on the factual allegations set forth in the pleading.
Additionally, Claimant's counsel argues that the Hasan [FN6]
decision is distinguishable from this case, as the doctrine of stare decisis applies to established legal principles rather than factual determinations. Here, questions remain regarding the Defendant's infection control protocols, their implementation, and whether they adequately addressed the Decedent's needs.
Counsel contends that Holder, Radiation Oncology Services [FN7]
 and Villar [FN8]
, supports denying a CPLR 3211 (a) motion based on an affirmative defense of immunity where factual disputes exist. Counsel emphasizes that dismissal at the pre-answer stage is inappropriate when discovery is necessary to determine the applicability of a defense.
Next, Claimant asserts that it has satisfied the pleading requirement pursuant to CPLR 3013 arguing that it provided "sufficient notice of the 'transactions, occurrences, or series of transactions or occurrences' related to the claims brough against them." Counsel further contends that the sole question that remains before the Court is whether the pleading states a claim for gross negligence, which constitutes an exception under Public Health Law § 3082.
With respect to the cause of action for gross negligence, citing to numerous cases from Richmond County, counsel argues that dismissal is not warranted even when facing an immunity defense grounded on the EDTPA as "the question of gross negligence is a matter to be determined by the trier of fact."[FN9]
Counsel further argues that dismissal would go against the strong public policy of resolving controversies and disputes on the merits, and that the Claim here pleads sufficient allegations of gross negligence to survive Defendant's dispositive motion.
As to the timeliness of the Claim, Counsel, quoting Dreger v New York State Thruway Auth., 81 NY2d 721, 723 [1992], argues that "[t]he Court of Claims Act contains no recommencement provision of its own, but section 10 (6) expressly incorporates the time limitations and tolling provisions of CPLR article 2, and [Court of Claims Act] § 9 (9) requires that Court of Claims practice follow Supreme Court practice, unless other provisions are expressly made. Thus, these actions may be recommenced if they qualify for recommencement under CPLR 205 (a)". Counsel argues that where an action is dismissed for lack of capacity to sue, a claimant is entitled to the benefit of the six-month saving provision of CPLR 205 (a). Accordingly, counsel concludes the Claim is not time-barred because the dismissal order of the [*6]prior action was entered by the Court on November 30, 2023, and refiled within six months, on May 21, 2024, by Linda Fabiano-Korth on behalf of the Estate of James Fabiano.
Lastly, counsel argues that the Claim is properly verified because "[e]ven though the [C]laimant resides in the same county as the undersigned, she was not available to verify her claim at the time it was filed" and therefore, the verification was made by counsel.
In reply, Defendant's counsel argues that Claimant failed to distinguish this case from Papandreou and therefore, the Court should similarly dismiss the Claim as time-barred, without assessing the factual allegations set forth therein.
Defendant argues that Claimant's contention that Defendant's motion is procedurally defective as a CPLR 3211 (a) motion due to its submission of Mr. Sganga's affidavit is flawed. The appellate courts have ruled that extrinsic evidence, specifically an affidavit, can be considered when deciding a pre-answer motion to dismiss. Further, Defendant's counsel contends that "Mr. Sganga's affidavit clearly demonstrates that LISVH arranged for and provided health care services for Mr. Fabiano in good faith, in accordance with evolving CDC and DOH COVID-19 guidance." Specifically, Mr. Sganga states that "the facility wide impact of COVID-19 at the LISVH, as well as the measures taken, . . . from March 3, 2020 until Mr. Fabiano's death on April 21, 2020", the LISVH's response to the COVID-19 outbreak and in support of federal and New York State directives to combat this deadly unprecedented disease impacted every aspect of Mr. Fabiano's care.
With respect to Claimant's contention that the motion should be denied because a claim for gross negligence has been asserted, and that ordinarily questions of gross negligence should be decided by a jury, Defendant's counsel argues that Claimant cannot invoke the narrow immunity exception based upon such "bald assertions" which have been consistently and repeatedly rejected by the Appellate Divisions and the Supreme Court.
Counsel contends that Claimant's reliance on the decision in Holder should not change this Court's analysis here as the decision specifically noted that it was based "on the record before [the court]" and the factual allegations here do fall within the protections set forth in the EDTPA. 

LAW AND ANALYSIS
Timeliness of the Claim
The State's waiver of immunity under Section 8 of the Court of Claims Act is conditioned upon claimant's compliance with specific conditions set forth in article II, including the time limitations set forth in Section 10 (see Court of Claims § 8; Alston v State of New York, 97 NY2d 159, 162-163 [2001]). These requirements "must be 'strictly construed and a failure to comply therewith is a jurisdictional defect compelling the dismissal of the claim'" (Hargrove v State of New York, 138 AD3d 777, 777-778 [2d Dept 2016], quoting Welch v State of New York, 286 AD2d 496, 497-498 [2d Dept 2001]; see Finnerty v New York State Thruway Auth., 75 NY2d 721, 722-723 [1989]).
The statute of limitations applicable to a cause of action for wrongful death is two years (see Court of Claims § 10 [2]).
"A claim by an executor or administrator of a decedent who left him or her surviving a husband, wife or next of kin, for damages for a wrongful act, neglect or default, on the part of the state by which the decedent's death was caused, shall be filed and served upon the attorney general within ninety days after the appointment of such executor or administrator, unless the claimant shall within such time serve upon the attorney general [*7]a written notice of intention to file a claim therefor, in which event the claim shall be filed and served upon the attorney general within two years after the death of the decedent. In any event such claim shall be filed and served upon the attorney general within two years after the death of the decedent. (id.)
In order for a person who intends to represent the estate of a decedent to comply with the filing and service provisions of Court of Claims Act §§ 10 (2) and (3), the statute contemplates that such "executor or administrator be formally appointed before commencing an action against the State" (Lichtenstein v State of New York, 93 NY2d 911, 913 [1999]). An administrator or executor "who start[s] her action in the Court of Claims before receiving letters of administration, [does] not meet the requirements of the Court of Claims Act, and thus [has] not properly commence[d] the action" (id.) [emphasis added]. Such failure to properly commence an action in the Court of Claims results in CPLR 205 (a)[FN10]
being unavailable to recommence the claim (see id., citing Dreger v New York State Thruway Auth., 81 NY2d 721, 723 [1992] ["CPLR 205 (a) allows recommencement only where the prior action was timely commenced . . . [which] requires literal compliance with the relevant statutes governing notice]; see also Liddel v State of New York, 182 Misc 2d 133, 137 [Ct Cl 1999] affd 278 AD2d 928 [4th Dept 2000] [CPLR 205 (a) not available to claimant who commenced an action on behalf of decedent without first obtaining letters of administration]).
Here, the Decedent died on April 20, 2020, taking into account the relevant tolling, Claimant had 2 years and 228 days to file the claim, to wit: by December 4, 2022. A person who seeks to represent a decedent in a claim who fails "to comply with either the filing or service provisions of the Court of Claims Act results in a lack of subject matter jurisdiction requiring dismissal of the claim" (Tooks v State of New York, 40 AD3d 1347, 1348 [3d Dept 2007] lv denied 9 NY3d 814 [2007]).
Accordingly, the Claim is untimely and must be dismissed on such basis. Notwithstanding that determination, the Court will analyze the remaining arguments.
Verification of the Claim
Court of Claims Act § 11 (b) requires that a claim "shall be verified in the same manner as a complaint in an action in the supreme court." Verification of a complaint in the Supreme Court requires a "statement [subscribed and affirmed] . . . that the pleading is true to the knowledge of the deponent, except as to matters alleged on information and belief, and that as to those matters such deponent believes it to be true" (CPLR 3020 [a]). If the verification is made by someone other than a party, "he must set forth in the affidavit the grounds of his belief as to all matters not stated upon his knowledge and the reason why it is not made by the party" (CPLR 3021). The Court of Appeals in Matter of Giambra v Commissioner of Motor Vehs. of State of NY (46 NY2d 743, 745 [1978]) made clear that where a pleading is verified by an attorney "there [*8]must be careful compliance with the mandates of CPLR 3021" (id. at 745).
The instant claim was verified by Claimant's attorney who states in his affirmation that "[e]ven though the claimant resides in the same county as the undersigned, she was not available to verify her claim at the time it was filed," which is why the verification was not made by the claimant. The Verification attached to the Claim, however, states "the reason this verification is made by affirmant and not by Claimant is that the Claimant herein resides in a County other than the County in which I maintain my offices," which is false. Thus, the verification is defective and subject to dismissal absent waiver of the defect by the defendant (see Ft. Holding Corp. v Otero, 157 Misc 2d 834, 838 [Civ Ct, NY County, 1993]; cf Gaffey v Shah, 131 AD3d 1006, 1006-1007 [2d Dept 2015]; Matter of Steele v State of New York, 19 Misc 3d 766, 769-770 [Ct Cl, 2008]).
Motion to Dismiss — Standard of Review
On a motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a claim, the facts alleged in the claim are typically accepted as true and the claimant is accorded every favorable inference (see Brown v University of Rochester, 216 AD3d 1328, 1330 [3d Dept 2023]), and "the Court is tasked with determining whether the alleged facts in the [claim] fit within 'any cognizable legal theory' "(Yearwood v Richmond Ctr. for Rehabilitation & Specialty Healthcare, 81 Misc 3d 1246[A], 2024 NY Slip OP 50168[U], *4 [Sup Ct, Richmond County 2024], citing Maursky v Latham, 219 AD3d 473, 474 [2d Dept 2023]; Grocery Leasing Corp. v P&C Merrick Realty Co., LLC, 197 AD3d 628, 629 [2d Dept 2021]). "At the same time, however, allegations consisting of bare legal conclusions ... are not entitled to any such consideration" (Simkin v Blank, 19 NY3d 46, 52 [2012][internal quotation marks and citation omitted]). "Dismissal of the [claim] is warranted if the [claimant] fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 142 [2017]).
However, where the Movant provides extrinsic evidence to the claim in support of the motion, a court "need not assume the truthfulness of the pleaded allegations. Instead, the criterion is whether the proponent of the pleading actually has a cause of action, not whether he [or she] has properly stated one" (Henderson v United Parcel Serv., 252 AD2d 865, 866 [3d Dept 1998] [internal quotation marks, ellipsis, brackets and citations omitted]; see Matter of Parvaz v Public Serv. Commn., 201 AD3d 1211, 1213—1214 [3d Dept 2022], lv dismissed & denied 38 NY3d 1029 [2022]). In such instance, the claimant "no longer can rely only on the unsupported factual allegations of the pleading, but must submit evidence demonstrating the existence of a cause of action" (Whitehead, 222 AD3d at 109-110 quoting, Matter of La Barbera v Town of Woodstock, 29 AD3d 1054, 1055 [3d Dept 2006], lv dismissed 7 NY3d 844 [2006]).
Where, as here, evidentiary material such as an affidavit is submitted in support of the motion, the focus is no longer merely on the adequacy of the claim's allegations; and such evidence must conclusively establish a defense to claimant's claims as a matter of law (see Holder, 231 AD3d at 87; Goldman v Metropolitan Life Ins. Co., 5 NY3d 561, 571 [2005]; David D. Siegel & Patrick M. Connors, New York Practice § 265 [6th ed, Jan. 2024 update]).
As to the required substance of a claim, CPLR 3013 governs and states, "[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." Notice and elements of the actions are the only [*9]requirements. If notice and the elements are present, a CPLR 3211(a) (7) motion must fail. The pleadings must be liberally construed. Draftsmanship and form are immaterial in relation to the subject motion.
The "Emergency or Disaster Treatment Protection Act"
The New York State Legislature enacted the EDTPA with the stated purpose of "promot[ing] the public health, safety and welfare of all citizens by broadly protecting the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with COVID—19 under conditions resulting from circumstances associated with the public health emergency" (Former Public Health Law § 3080, Repealed by L 2021, ch 96, §1).
The EDTPA was deemed to be in full force and effect as of March 7, 2020, was amended on August 3, 2020, and repealed on April 6, 2021. Initially, Claimant's counsel argued that the repeal of EDTPA was retroactive, however, it is now well-settled among the Appellate Courts that it is not. Accordingly, the protections were in place in April of 2020.
Initially, the EDTPA provided, with certain exceptions, that a health care facility "shall have immunity from any liability, civil or criminal, for any harm or damages alleged to have been sustained as a result of an act or omission in the course of providing health care services" if three conditions were met: "the services were arranged for or provided pursuant to a COVID—19 emergency rule or otherwise in accordance with applicable law; the act or omission was impacted by decisions or activities that were in response to or as a result of the COVID—19 outbreak and in support of the State's directives; and the services were arranged or provided in good faith (see id.; citing Former Public Health Law § 3082 [1] Repealed by L 2021, ch 96, §1; Mera, 220 AD3d at 669). The following health care services were covered by the immunity provision: "those related to the diagnosis, prevention, or treatment of COVID—19; the assessment or care of an individual with a confirmed or suspected case of COVID—19; and the care of any other individual who presented at a health care facility or to a health care professional during the period of the COVID—19 emergency declaration" (see id. at 669-670, citing Former Public Health Law § 3081 [5] Repealed by L 2021, ch 96, §1; Mera, 220 AD3d at 669-670).
A moving party's showing of "impact" on relevant patient treatment triggers immunity on the EDTPA. The statute does not require qualification of the impact, e.g. positive, negative or neutral, but rather merely requires that the treatment be impacted by "decisions or activities [that were] in response to or as a result of the COVID—19 outbreak and in support of the State's directives" (Hasan, 224 AD3d at 478, citing Former Public Health Law § 3082 [I] [a]-[c], Repealed by L 2021, ch 96, §1).
The only exception to immunity, according to Former Public Health Law § 3082 (2), (Repealed by 2021 L ch, 96, §1) is where an individual's alleged injuries were caused by gross negligence or intentional criminal misconduct. This provision further provided that "acts, omissions or decisions resulting from a resource or staffing shortage shall not be considered to be willful or intentional criminal conduct, gross negligence, reckless misconduct, or intentional infliction of harm."
Claimant's reliance on Holder in support of his argument that the immunity exception does not apply is misplaced. The plaintiff in that case sustained permanent injuries as result of a fall while hospitalized. The Court in that case held that the plaintiff failed to establish that the [*10]defendant's alleged negligent medical care and treatment fell within the scope of the facts and circumstances covered by the EDTPA.
Retroactivity of the Repeal of the "Emergency or Disaster Treatment Protection Act"
The EDTPA was repealed on April 6, 2021 (L 2021, ch 96, § 1), and all of the Appellate Departments have now held that the legislation repealing the EDTPA should not be applied retroactively (see Whitehead, 222 AD3d at 109; Ruth, 209 AD3d at 1291; Hasan, 224 AD3d at 476; Damon, 228 AD3d at 619).
Gross Negligence
To establish gross negligence, a claimant must demonstrate that the defendant's conduct involved "intentional wrongdoing or evinced a reckless indifference to the rights of others" (see Skywest, Inc. v Ground Handling, Inc., 150 AD3d 922, 923 [2d Dept 2017]). Here, the Claimant failed to sufficiently plead the cause of action alleging gross negligence. Specifically, Claimant failed to allege specific acts or omissions by the Defendant demonstrating an intentional wrongdoing or reckless indifference to the Decedent. Furthermore, the Court finds that Claimant's allegations, even if assumed to be true, are conclusively refuted by the Affidavit of Mr. Sganga and other exhibits, which establish, inter alia, that the LISVH maintained an infection control policy prior to the onset of COVID-19 and implemented additional procedures in response to the COVID-19 pandemic.
The Court, therefore, holds that Claimant does not have a cause of action for gross negligence. Dismissal of such cause of action would, therefore, also be warranted pursuant to CPLR 3211 (a) (7).

DECISION AND ORDER
Here, the Claim contains conclusory and bare-bone allegations that the Defendant's acts or omissions constituted willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm. Defendant has satisfactorily established that, in light of the EDTPA, Claimant does not have causes of action for negligence, violations of the Public Health Law, or wrongful death. Furthermore, the Affidavit of Mr. Sganga, and other exhibits, established that the Decedent's treatment was impacted by LISVH's response to the COVID-19 pandemic, and that LISVH arranged for and provided health care services for the Decedent in good faith.
Once the Defendant has satisfied its burden of demonstrating that the Claim fails to state a viable cause of action, the burden shifted to the Claimant to produce extrinsic evidence establishing the existence of such a claim. In this case, the Claimant failed to submit any supporting documentation—such as an affidavit—that would substantiate the alleged causes of action for negligence, violations of the Public Health Law, or wrongful death. Accordingly, the Court finds that the Claimant did not meet the burden of presenting extrinsic evidence sufficient to establish these claims (Whitehead, 222 AD3d at 109-110 citing, Matter of La Barbera, 29 AD3d at 1055).
Having, therefore, failed to make a prima facie showing that the conduct was such that exceptions to the immunity provisions of the EDTPA cannot and do not apply to the Defendant, the Claim must be dismissed.
Accordingly, it is hereby
ORDERED that Claim No. 142165, alleging causes of action for negligence, violations of Public Health Law, and wrongful death, is DISMISSED, as untimely; and it is further
ORDERED that the Clerk shall close the file.
Dated: April 16, 2025
Hauppauge, New York
HON. LINDA K. MEJIAS-GLOVER,
Judge of the Court of Claims
Papers Read:
1. Notice of Motion, Affirmation in Support, Exhibits Annexed
2. Affirmation in Opposition, Exhibits Annexed
3. Reply Affirmation in Further Support, Exhibits Annexed

Footnotes

Footnote 1:Whitehead v Pine Haven Operating LLC, 222 AD3d 104 [3d Dept 2023].

Footnote 2:Ruth v Elderwood at Amherst, 209 AD3d 1281 [4th Dept 2022].

Footnote 3:Mera v New York City Health & Hosps. Corp., 220 AD3d 668 [2d Dept 2023].

Footnote 4:Martinez v NYC Health & Hosps. Corp., 223 AD3d 731 [2d Dept 2024].

Footnote 5:Damon v Clove Lakes Healthcare and Rehabilitation Ctr., Inc, 228 AD3d 618 [2d Dept 2024].

Footnote 6:Hasan v Terrace Acquisitions II, LLC, 224 AD3d 475 [1st Dept 2024].

Footnote 7:Radiation Oncology Servs. Of Cont. NY, P.C. v Our Lady of Lourdes Mem. Hosp., Inc., 148 AD3d 1418 [3d Dept 2017].

Footnote 8:Villar v Howard, 28 NY3d 74 [2016].

Footnote 9:Estate of Pierro v Carmel Richmond Healthcare & Rehabilitation, Ctr., 81 Misc 3d 1085 [Sup Ct, Richmond County 2023].

Footnote 10:CPLR 205 (a) provides in pertinent part that, (where "an action is timely commenced and is terminated in any other manner [—other than those not applicable here —] the [claimant], or his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action that was dismissed.")